UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARBARA STEWART                                                **COMPLAINT**

       Plaintiff,
                 Civ. No:_____
v.

MICHELE STEWART
a/k/a Michele Bouman-Stewart

       Defendant.
_____

  The Plaintiff, BARBARA STEWART, by her attorneys Marcus & Cinelli LLP, and HoganWillig as and for her Complaint against Defendant, MICHELE STEWART, a/k/a MICHELE BOUMAN-STEWART, hereby alleges:

## NATURE OF THE CASE

  1. This is an action to redress breaches of fiduciary duties owed by defendant to plaintiff and to account for and recover a valuable jewelry collection that plaintiff owned and entrusted to defendant as fiduciary, but which defendant has refused to account for or return. This is also an action for fraud and for the imposition of a constructive trust.

  2. Plaintiff seeks an accounting of the jewelry and injunctive relief requiring defendant to return said jewelry and damages to the extent defendant's fraud and violation of her fiduciary obligations resulted in the loss or diminution of the value of said assets.

## THE PARTIES

  3. Plaintiff is a citizen of the United States with a principal residence in New York State. Plaintiff also owns a home in Switzerland which she resides in from time to time.

4.      Defendant is plaintiff's former daughter in law, and is a Dutch citizen who at all relevant times has resided in Villars sur Ollon, Switzerland.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the plaintiff and defendant are citizens of different states and countries.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(c)(3).

## FACTS

7.      Plaintiff's jewelry collection was acquired over many years and included some unique and extremely valuable pieces.

8.      Plaintiff's husband, Bill Stewart ("Bill"), was a highly successful financial advisor who managed and controlled the marital assets and finances. Plaintiff, unsophisticated in financial and tax matters, relied on Bill and his lawyers, who made virtually all the financial and tax decisions for the couple.

9.      Around 1994, Bill instructed his Swiss lawyer, John Iglehart, to create a company to take ownership of plaintiff's jewelry, which plaintiff intended to be passed on to her two granddaughters, one of whom was defendant's daughter, after her death. At that time, plaintiff's jewelry collection was likely worth less than $100,000. Bill advised plaintiff that placing the jewelry in a separate company would serve as a tax planning device and would avoid taxation of the transfer on plaintiff's death.

10.     Attorney Iglehart, an American born Swiss lawyer, had represented Bill and plaintiff for many years and had handled a variety of matters for them. Attorney Iglehart also had power of attorney to handle plaintiff's finances in Switzerland.

11. Defendant was not only plaintiff's daughter in law; defendant resided with her children in a home near plaintiff's in Switzerland and plaintiff and Bill were extremely generous towards defendant—generosity that continued even after the divorce between defendant and plaintiff's son, William Stewart, III.

12. Defendant had been a trusted friend and member of the family, and was included in family businesses. She was employed by one of Bill's New York companies and had a power of attorney for plaintiff, which she used to manage and care for plaintiff's Swiss home while plaintiff was away.

13. In or about 1994, in accordance with Bill's instructions, attorney Iglehart is believed to have formed a company called Topaze Limited ("Topaze") to hold plaintiff's jewelry until her death, at which time it was to be passed on to plaintiff's granddaughters. Plaintiff, who was devoting much of her time and energy to a charitable organization she formed to teach English to Vietnamese children, was informed of Topaze shortly after it is believed that company had been formed.

14. Plaintiff was led to understand that Topaze had been formed to hold the jewelry in trust for plaintiff and her granddaughters, the latter who were to obtain ownership upon plaintiff's death. Plaintiff was also led to believe by Bill, Iglehart and defendant that defendant would own and/or control Topaze, and would act as a fiduciary to safeguard the assets and to ensure they were distributed to the intended beneficiaries on plaintiff's death. Based on these representations, plaintiff was induced to consent to this arrangement and transfer ownership of her currently owned and subsequently acquired jewelry to Topaze. To plaintiff, this arrangement merely allowed her to carry out her inheritance wishes while at the same time complying with Bill's desire to account for tax planning considerations.

15. Plaintiff thereafter continued to have access to the jewelry, which was kept in various locations.

16. Most of the more valuable pieces, including an emerald bracelet worth over $2,000,000, was acquired after Topaze was formed, and was secured in a bank safe deposit box in a Swiss Bank in plaintiff's name. As fiduciary, defendant was allowed unfettered access to this safe.

17. Although plaintiff had complete trust and confidence in attorney Iglehart and defendant, at no time was any legal paperwork reflecting the formation of Topaze provided to her. The cost of maintaining the jewelry, including insurance, continued to be paid by plaintiff through fund transfers made by defendant or attorney Iglehart using their power of attorney over plaintiff's bank account.

18. Subsequent to being advised of the formation of Topaze, defendant reported to plaintiff that she, using attorney Iglehart, had formed a new company called DGBF to replace Topaze. As plaintiff trusted attorney Iglehart and defendant, once again she neither requested to see the applicable legal papers and documents reflecting the formation of the new company, nor were any provided to her.

19. Around 2007, plaintiff and her husband Bill began an acrimonious divorce action in New York State Supreme Court, New York County, for dissolution of their long term marriage. During the course of the litigation, Bill, who had accumulated substantial wealth during the marriage, contended that plaintiff's equitable distribution of the marital assets should be reduced or eliminated in large part because plaintiff owned millions of dollars of jewelry which equaled property and cash in his name.

20. Based on the information presented to plaintiff, namely that the jewelry was placed in trust in Topaze at Bill's insistence, as aforesaid, plaintiff contended during the marital litigation that the jewelry was intended to be distributed to her granddaughters on her death, and it accordingly should not be deemed a marital asset to be offset against Bill's assets for purposes of equitable distribution.

21. To establish her claim, plaintiff sought to obtain from defendant and attorney Iglehart the legal documents establishing the formation and existence of Topaze and/or DGBF and defendant's fiduciary obligations. When plaintiff's marriage fell apart, however, attorney Iglehart continued to perform legal work for Bill, but not for plaintiff. Iglehart refused to respond to plaintiff's requests for her legal files maintained by him, including any files pertaining to Topaze or the jewelry.

22. Defendant, who continued to work for Bill's New York company, was financially dependent on Bill. In addition to her paycheck, Bill, who is trustee of defendant's ex-husband's trust, had discretion whether or not to pay from that trust his son's substantial child support obligations that defendant relied on. Furthermore, plaintiff learned during the course of her divorce case that attorney Iglehart and defendant had become romantically involved, and Iglehart was also providing legal counsel to defendant.

23. Both defendant and attorney Iglehart accordingly resisted taking any action that would be perceived by Bill as contrary to his interests. As plaintiff's divorce lawyers contended that her transfer of the jewelry in trust to Topaze meant that the assets she possessed had substantially less value than Bill's, proof of the existence of Topaze would have been detrimental to Bill in the divorce action. Not surprisingly, Bill contended during the marital litigation that he

knew nothing about the transfer of any jewelry to Topaze and insisted that the jewelry was owned by plaintiff.

24. Plaintiff's efforts to obtain this documentation were accordingly unsuccessful, as both defendant and Iglehart refused to supply the necessary paperwork reflecting the formation of Topaze or DGBF, or to state alternatively that these companies never existed.

25. Due in large part to defendant's silence and concealment, the marital court rejected plaintiff's undocumented claim that ownership of the jewelry was transferred to Topaze. The Court accordingly found that the jewelry was owned by plaintiff for purposes of equitable distribution, and she was awarded that jewelry, valued at $8,520,000, in lieu of millions of dollars of cash and other assets Bill admittedly possessed. The trial court's order was affirmed by the Appellate Division in November 2015.

26. Having assisted Bill through her silence and concealment to obtain a ruling in the New York State Courts that the jewelry was owned by plaintiff and not Topaze, defendant then sought to profit from her fraud by proceeding to take ownership of the jewelry on the claim that she owned or controlled Topaze, and that plaintiff had admitted in her marital case that she had given the jewelry to that company. This assertion was made in reply to plaintiff's demand to defendant for an accounting of her jewelry and her effort to file criminal charges against her in Switzerland when defendant refused to comply with that request. That matter was brought before a Swiss tribunal, which refused to pursue charges against defendant and ruled that plaintiff would need to pursue her claims in civil court. Still, upon information and belief, defendant at no time revealed the legal documents forming any company purportedly owning the jewelry or holding it in trust.

27. In June 2017, following years of requests by plaintiff for her legal files maintained by attorney Iglehart, Iglehart finally produced those files. No legal documents establishing any company relating to plaintiff's jewelry were contained in those files. This revelation raised further concern on plaintiff's behalf as to whether the companies Topaze and DGBF were ever in fact formed.

28. Furthermore, plaintiff has learned that defendant may now be intending to sell the jewelry for her own profit, and she believes that defendant is treating the jewelry as though she has personal ownership of those assets.

29. On December 8, 2017, plaintiff's counsel wrote to defendant and formally demanded that she account for the jewelry, that she provide the legal documentation establishing Topaze and DGBF, and further that defendant return the jewelry to plaintiff. Defendant has ignored those requests and has failed to respond to or communicate in any manner with plaintiff or her counsel on that issue.

## FIRST CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY

30. Plaintiff repeats and realleges paragraphs 1-29 as if alleged herein.

31. Defendant at all times owed a fiduciary duty to plaintiff with respect to plaintiff's jewelry, which was to be held in trust for plaintiff until plaintiff's death, whereupon it was to be transferred to plaintiff's granddaughters.

32. Defendant knowingly and wrongfully breached her fiduciary duty and responsibility she had to plaintiff by failing and refusing to provide necessary legal documents to plaintiff to establish in her divorce action that said jewelry was held in trust by Topaze and/or DGBF, or to reveal that said company was not created and did not exist.

33. Defendant further breached her fiduciary duty by failing to account for said jewelry, and to return it to plaintiff on her request.

34. Moreover, defendant knowingly and wrongfully breached the fiduciary duty she owed to plaintiff by removing the jewelry from plaintiff's bank safe and appropriating said jewelry to herself and for her personal gain.

35. By reason of the foregoing, plaintiff is entitled to injunctive and other equitable relief as described and demanded herein.

## SECOND CAUSE OF ACTION: FRAUD

36. Plaintiff repeats and realleges paragraphs 1-35 as if alleged herein.

37. At all times, by acts, words and her conduct, defendant led plaintiff to believe that the jewelry would be maintained by defendant in trust for safekeeping and transferred to plaintiff's granddaughters on her death. By reason of the foregoing, and having been induced by defendant's assurances and promises, plaintiff agreed to relinquish possession of said assets in whole or in part, and to entrust said assets to defendant's care.

38. Defendant thereafter failed and refused to reveal legal documents necessary for plaintiff to establish the agreed-to arrangement, and defendant's concealment resulted in deleterious findings against plaintiff in her divorce action. Defendant thereafter sought to use plaintiff's testimony in her marital case against her by contending that plaintiff had relinquished her rights in the jewelry to Topaze. Defendant, having induced plaintiff to place her jewelry in trust with Topaze on the promise that she would protect plaintiff's interest in said jewelry, has concealed legal documents establishing Topaze or concealed the fact that Topaze was never formed, in so doing, now asserts that she is the owner. Defendant's actions have resulted in the dual injury to plaintiff of: a) the New York State Court rulings that plaintiff is the owner of the

jewelry, which likely caused her loss of millions of dollars of equitable distribution assets, and b) her actual loss of the jewelry, which has been appropriated by defendant.

39. Upon information and belief, defendant has either concealed and misrepresented the true nature of Topaze and DGBF or misrepresented and concealed the fact that these companies were never formed. Having taken possession of said jewelry by false pretenses, defendant now seeks to treat said assets as her own personal property and deny plaintiff any rights she was led to believe she had in those assets.

40. As a result of the foregoing, plaintiff has suffered damage and is entitled to injunctive and other equitable relief as described and demanded herein.

### THIRD CAUSE OF ACTION: CONSTRUCTIVE TRUST

41. Plaintiff repeats and realleges paragraphs 1-40 as if alleged herein.

42. In the event defendant has sold the jewelry despite her fiduciary duties to the plaintiff and despite her representations to plaintiff, as aforesaid, any proceeds obtained by defendant as a result have been wrongfully obtained by defendant through the breach of fiduciary duties owed to plaintiff and by fraud.

43. Accordingly, in order to protect plaintiff's interest in proceeds derived from the jewelry and to prevent the defendant from profiting from her wrongdoing, a constructive trust in favor of plaintiff must be imposed upon such proceeds.

### FOURTH CAUSE OF ACTION: INJUNCTION

44. Plaintiff repeats and realleges paragraphs 1-43 as if alleged herein.

45. Defendant has wrongfully withheld, misappropriated and assumed control over plaintiff's jewelry.

46. Plaintiff lacks an adequate remedy at law, due to the unique and irreplaceable nature of the assets.

47. As a result of the foregoing, defendant must be enjoined from the transfer or sale of said assets.

48. Moreover, defendant should be enjoined from acting as a fiduciary on behalf of plaintiff, Topaze or DGBF.

49. Furthermore, defendant should be ordered to return said jewelry to plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment against defendant as follows:

(A) That defendant provide an accounting of all jewelry and assets transferred from plaintiff or her representatives to defendant, Topaze and DGBF for the purposes described above, and to identify the current whereabouts of said jewelry and assets;

(B) That a constructive trust be imposed on any assets received by defendant from sale or transfer of any jewelry or property as described in the THIRD CAUSE OF ACTION, above;

(C) That defendant be relieved of any fiduciary responsibilities towards plaintiff, Topaze, DGBF and any related companies with respect to the assets at issue in this matter;

(D) That defendant be permanently enjoined from the transfer or sale of the assets at issue in this matter, and that an order be entered granting plaintiff the return of all assets at issue in this matter;

(E) That plaintiff be awarded damages in an amount estimated to be an amount not less than $5,000,000 as a result of defendant's fraud;

(F) That plaintiff be awarded costs and disbursements necessary to this action, attorneys' fees, and for such other relief as this Court deems just and proper.

DATED: February 5, 2018                    **MARCUS & CINELLI, LLP**

*[signature: David P. Marcus]*

David P. Marcus, Esq.
8416 Main Street
Williamsville, New York 14221
Telephone: (716) 565-3800

and

**HOGANWILLIG**
Edward P. Yankelunas, Esq.
2410 North Forest Road, Ste. 301
Amherst, New York 14068
Telephone: (716) 636-7600

*Attorneys for Plaintiff*