IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA STEWART,<br><br>        Plaintiff,<br><br>v.<br><br>MICHELE STEWART a/k/a Michele Bouman-Stewart,<br><br>        Defendant. | Civil Action: **1:18-cv-00201-GWC**<br><br>**DECLARATION OF<br>JASCHA D. PREUSS** |

Jascha D. Preuss declares the truth of the following under penalty of perjury, pursuant to 28 U.S.C. § 1746:

### Qualifications

1. I am an attorney at law qualified in the State of New York since 2003.

2. I am also an attorney at law qualified to practice in all cantons of Switzerland since 1999.

3. I am a member of the law firm Reiss+Preuss LLP in New York City. The majority of my practice consists of advising Swiss clients doing business in the United States.

4. Since 2008, I am also the President of the Swiss American Lawyers Association of Greater New York, Inc., a bar association for attorneys whose work involves Swiss and American legal issues.

5. I graduated with a law degree (lic.iur.), *magna cum laude*, from the University of Basel, Switzerland in 1991. My course of studies covered all aspects of Swiss law.

6. I subsequently worked from 1992 to 1996 as a research and teaching fellow at the law schools of the University of Basel, and of Humboldt-University of Berlin, Germany, where I taught and researched Swiss and German law.



7. From 1997-1998 I clerked for the District Court of Zurich and then the Claims Resolution Tribunal for Dormant Accounts in Switzerland ("CRT"). While at the District Court I researched and drafted numerous opinions on civil law claims and in criminal matters. At the CRT I researched and drafted numerous opinions in matters involving civil law claims and conflicts of law questions.

8. In 1999 I was admitted to the Swiss bar, after passing the Zurich bar exam.

9. From 2000 to 2001, I was an associate attorney in the Swiss law firm of Wenger Plattner, where I advised and represented domestic and international clients in civil law matters, regularly considering questions of conflicts of law.

10. From 2001 to 2002 I studied law at New York University School of Law and obtained a Master of Laws. While at NYU, I was a research assistant in international law for Prof. Benedict Kingsbury.

11. Upon being admitted to the New York bar, I was associated with Thelen Reid & Priest LLP from 2003 to 2006. I worked on international litigation matters, often involving questions of personal jurisdiction and conflicts of law.

12. From 2006 to 2009 I was associated with Mayer Brown LLP, where I worked on international financial transactions and also continued working on an international civil forfeiture matter I had taken on while at Thelen Reid & Priest LLP.

13. Since 2009 my practice has focused on Swiss and other European clients, first as counsel at Wuersch & Gering LLP in New York City, and since 2010 as a founding partner of Reiss+Preuss LLP. I represent clients in corporate, and commercial transactions and, together with litigators in my own firm or partner firms, in international litigation matters, including with regard to questions of *forum non conveniens*.

## Purpose of Declaration

14. Michele Stewart (nee Bouman), the defendant in this action, requested that I provide this declaration in connection with her motion to dismiss the above captioned lawsuit in the U.S. District Court for the Western District of New York based on *forum non conveniens*.

15. The purpose of the declaration is to show that
    a. Swiss courts at the domicile of the defendant have personal jurisdiction over the defendant in the event of a lawsuit brought by the plaintiff; and
    b. Swiss law provides for causes of action and remedies that are similar in function to the causes of action brought and the remedies requested by the plaintiff in her complaint.

16. I am not commenting on whether the facts pled by the plaintiff in her complaint would, if true, establish the elements of any of the available causes of action under Swiss law or entitle the plaintiff to any remedy sought.

## Facts

17. I have personal knowledge of the facts set forth herein, having reviewed the plaintiff's complaint and a declaration by Michele Stewart (née Bouman), the defendant, dated March 19, 2018, the "Stewart Declaration".

18. I understand that Michele Stewart is a Dutch citizen and a permanent resident of Switzerland. She resides in Villars sur Ollon in the Canton of Vaud. (Complaint at 4)

19. I understand that Barbara Stewart, the plaintiff, is a dual American and Swiss citizen who resides in New York and owns real property in Villars sur Ollon, the same town where the defendant resides. (*Id.* at 3; Stewart Declaration at 5.)

20. I understand that the plaintiff's relevant factual allegations (which are disputed by the defendant) are, in essence, the following:

   a. Plaintiff transferred ownership of her jewelry to Topaze, an entity set up by her Attorney Iglehart in Switzerland. (Complaint at 13-14)

   b. Plaintiff did so based on the representations by Iglehart, plaintiff's then husband Bill, and the defendant, that Topaze would hold the jewelry in trust for the benefit of plaintiff's granddaughters upon her passing, and that the defendant would own or control Topaze. (*Id.* at 14)

   c. Subsequently plaintiff was informed that ownership of the jewelry had been transferred to a new entity, DGBF, to replace Topaze. (*Id.* at 18)

   d. In plaintiff's subsequent divorce proceedings from Bill, plaintiff maintained that she had placed the jewelry in trust for the benefit of her granddaughters and that therefore it was not part of the marital assets to be offset against Bill's assets for purposes of equitable distribution. (*Id.* at 20)

   e. Plaintiff demanded that defendant and Iglehart provide the legal documentation establishing the formation of Topaze and/or DGBF and defendant's fiduciary obligations. (*Id.* at 21) Defendant and Iglehart refused to provide the paperwork or to state that these companies never existed. (*Id.* at 24)

   f. The marital court rejected plaintiff's undocumented claim that the ownership of the jewelry had been transferred to Topaze and found that the jewelry belonged to plaintiff for purposes of the equitable distribution, resulting in a reduced cash award to plaintiff in the equitable distribution. (*Id.* at 25)

    g. Defendant then allegedly took ownership of the jewelry, based on the claim that she owned or controlled Topaze, and that plaintiff had admitted in the marital case that she transferred ownership to that entity. (*Id.* at 26)

    h. Iglehart's attorney's files released to plaintiff contained no documents establishing any company relating to plaintiff's jewelry. Plaintiff is unsure if the companies Topaze and DGBF were ever in fact formed. (*Id.* at 28)

    i. Plaintiff believes that defendant may now be intending to sell the jewelry for her own profit and is treating it as though she has personal ownership of it. (*Id.* at 28)

    j. Defendant ignored requests to account for the jewelry, provide the legal documentation regarding the establishment of Topaze and DGBF, and return the jewelry to plaintiff.

### Plaintiff's Causes of Action and Relief Requested

21. Plaintiff contends that defendant breached a fiduciary duty to her with respect to the jewelry by: not providing the legal documentation establishing the holding in trust of the jewelry by Topaze and DGBF, not accounting for the jewelry, and misappropriating the jewelry for her own gain. (*Id.* at 31-34). Accordingly, plaintiff demands that defendant: account for the jewelry received from plaintiff and identify its current whereabouts (*id.* at 49A); and be relieved from her fiduciary duties to plaintiff and any entity holding the jewelry. (*Id.* at 49C)

22. Plaintiff further contends that defendant committed fraud by: (i) inducing plaintiff to believe that the jewelry would be kept by Topaze in trust for the benefit of her granddaughters; (ii) causing plaintiff to relinquish possession of the jewelry to Topaze (*id.* at 37); (iii) subsequently concealing legal documents regarding the establishment of

Topaze or concealing that Topaze was never established (*id.* at 38); (iv) causing the New York State court in the marital proceedings to rule that plaintiff is the owner of the jewelry resulting in the loss of millions of dollars of equitable distribution assets (*id.*); (v) taking possession of the jewelry and is seeking to treat it as her own property (*id.* at 39); and (vi) thereby causing damage to plaintiff. (*Id.* at 40). Plaintiff demands damages in an amount of not less than $5,000,000 (*id.* at 49E); a prohibition to defendant to sell or transfer the jewelry (*id.* at 49D), and an order to return of the jewelry. (*Id.*)

23. Plaintiff furthermore contends that in the event defendant has already sold the jewelry, despite her fiduciary duties and representations to plaintiff, the proceeds of such sale would be wrongfully obtained (*id.* at 42); therefore plaintiff demands that a constructive trust be imposed upon these proceeds. (*Id.* at 43, 49B).

## Jurisdiction of the Swiss Courts

24. Civil claims against the defendant can be brought by the plaintiff in the Swiss courts with jurisdiction over defendant in the municipality of Villars sur Ollon in the Canton of Vaud, where the defendant is and has been a permanent resident for 24 years.

25. The Swiss Federal Private International Law Act ("PILA") governs whether a Swiss court has jurisdiction[1] in international civil matters, where one party is domiciled outside of Switzerland.[2] Assuming the plaintiff is domiciled in New York, the PILA applies and

---

[1] Like American law, Swiss law determines the jurisdiction of its courts primarily based on a territorial nexus but, unlike American law, it does not ask whether the Swiss court has jurisdiction over the defendant based on her contacts to the forum (personal jurisdiction), but determines that jurisdiction exists if specific elements of a cause of action alleged against a defendant have a sufficient nexus to Swiss territory, speaking in terms of territorial jurisdiction (French: *compétence territoriale*; German: *örtliche Zuständigkeit*).

[2] The Swiss court would determine where the parties are domiciled based on PILA Article 20 section 1.a, which provides in relevant part that a person has his or her domicile in the state in which he or she resides with the intention to remain permanently. Despite her secondary residences in Switzerland I have assumed that the plaintiff has her domicile in New York, New York, outside of Switzerland. But if a Swiss court found that the plaintiff has her domicile in Switzerland my conclusions regarding jurisdiction of Swiss courts would be the same.

pursuant to PILA Article 2 section 1, the Swiss judicial authorities, i.e., courts, at the domicile of the Swiss-based defendant have jurisdiction with respect to claims brought against him or her, absent specific provisions providing for a different place of jurisdiction.[3] Thus, the courts of the Canton of Vaud would have jurisdiction over claims against defendant.

26. To the extent the plaintiff's claims are based on a contract, such as an agreement establishing a fiduciary relationship between her and the defendant, PILA Article 112 section 1 confirms the general principle that the Swiss courts at the defendant's domicile, i.e., the courts of the Canton of Vaud, have jurisdiction.

27. To the extent the plaintiff's claims sound in tort, such as civil fraud, pursuant to PILA Article 129 section 1, the Swiss courts at the defendant's domicile have jurisdiction.

28. To the extent the plaintiff's claims are based on rights to personal property, such as her ownership of the jewelry, pursuant to PILA Article 98 section 1, the courts at the defendant's domicile in Switzerland have jurisdiction.[4]

29. To the extent the plaintiff's claims are based on a trust arrangement, pursuant to PILA Article 149*b* section 3.a., in the absence of a valid forum selection clause in writing, the Swiss courts at the domicile of the defendant have jurisdiction.[5]

30. Lastly, pursuant to PILA Article 6, if a defendant makes an appearance in a lawsuit raising pecuniary claims against him or her in a Swiss court, the Swiss court has jurisdiction as

---

[3] For domestic matters, i.e., where both parties are domiciled in Switzerland, Article 10 section 1.a. of the Swiss Federal Code of Civil Procedure provides the same.
[4] Pursuant to PILA Article 98 section 2, the courts at the place in Switzerland where the property, i.e., the jewelry, is located would have jurisdiction as well.
[5] Pursuant to PILA Article 149*b* section 3.b., if the trust has its legal seat in Switzerland, the courts at the seat have jurisdiction as well.

well, and may not refuse to exercise jurisdiction if one party to the lawsuit has his or her domicile in Switzerland.

31. In sum, Swiss courts at defendant's domicile, in the Canton of Vaud, have jurisdiction to adjudicate potential claims plaintiff may bring against defendant in Switzerland, and other courts in Switzerland may have jurisdiction as well, depending on the nature of the claims and the facts alleged.

### Available Causes of Action under Swiss Law

#### Breach of Fiduciary Duty

32. Plaintiff contends that defendant had an agreement with her, pursuant to which defendant owed her and breached a fiduciary duty with respect to the jewelry that plaintiff allegedly transferred to Topaze. Under Swiss Law, Plaintiff can pursue her claims of breach of fiduciary duty and accounting. *See* Swiss Federal Code of Obligations ("CO"), Articles 394 *et seq.*

#### Criminal Fraud as Civil Tort

33. While there is no separate cause of action for civil law fraud under Swiss law, several causes of action exist which are functionally similar to the common law notion of civil fraud.

34. This includes civil causes of action based on (1) criminal fraud, as described in Article 146 of the Swiss Federal Criminal Code, in conjunction with CO Article 41, entitling the plaintiff to damages; (2) fraud in the inducement of a contract (contractual fraud) under CO Article 22 *et seq.*, entitling the plaintiff to rescission of the contract, (3) unjust enrichment pursuant to CO Article 62 *et seq.*, and (4) return of personal property pursuant to Article 641 of the Swiss Federal Civil Code.

Interim Measures

35. Plaintiff also requests an injunction to enjoin defendant from selling or otherwise disposing of the jewelry. Such an injunction can be obtained, pursuant to Article 261 of the Swiss Federal Code of Civil Procedure ("CCP").

36. The requirements for preliminary measures do not differ fundamentally from those under New York law, and the effect of the measures would be similar to those in New York.

**Summary**

37. Based on the foregoing I conclude that if the facts set forth in the plaintiff's complaint are pled with sufficient detail, as required by the pleading rules of the CCP, plaintiff would have substantially similar causes of action and comparable remedies as in a federal district court the United States.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 19, 2018

By:  Jascha D. Preuss