Translation from French

CANTON OF VAUD
DISTRICT COURT FOR
EASTERN VAUD

TU00.01717O

Cass postale 496
Rue du Simplon 22
1800 Vevey 1

## DECREE BY DEFAULT

entered by the

## CIVIL COURT

on AUGUST 23, 2012

in the matter of

STEWART-BOUMAN Michele vs. STEWART William P. III

Divorce with unilateral petition

*****

Hearing of May 3, 2012

Chaired by Mr. Ph. Goermer, President

Judges: Mrs. HIGY, Mr. GUEX

Court clerk: Mr. Lionel DUCRET

Phone 021 557 1250 Fax 021 557 1282 CCP 18-209-6



---

## CERTIFICATE OF ACCURACY

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF NEW YORK )

Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

Notary Public

MOHAMMED N. MUJUMDER
Notary Public State of New York
No. 03-49E2808
Qualified in Bronx County
Commission Expires Feb. 26, 2018

Translation from French                                                                                                           1

Resolving *in camera*, the Court first decides on the application to enter default submitted by the Petitioner.

Whereas in this respect the Defendant, William Pierce STEWART III, although duly summoned to appear at this hearing by way of a writ dated November 17, 2011, has not appeared at the opening of the trial,

Whereas, more than an hour after the time scheduled for his appearance, he has continued to be in default while there are no grounds for admitting that he has failed for substantive reasons,

Considering Articles 305 *et seq.* of the Code of Civil Procedure of Vaud (CPC/VD),

The Court decides to enter a decree by default against foe Defendant.

Under Article 371 par. 1 of the CPC/VD, summary proceedings are applicable to divorce petitions; therefore, a settlement after testimony is not necessary.

Article 308 of the CPC/VD is therefore applicable as regards the Statement of facts.

Now entering its decree, the Court takes note of foe following

## STATEMENT OF FACTS:

A.-        William Pierce III STEWART, born on June 9, 1967, a US citizen, and
Michele Henriette STEWART nee BOUMAN, born on December 15, 1967, a Belgian citizen, married on November 24, 1990 in Brussels.

Two children were born of their union:

-   Vanessa Marie, born on August 19, 1994 (hereinafter Vanessa);

-   William Pierce IV, born on March 13, 1996 (hereinafter William).

B.-        The children's situation is as follows:
William currently attends a secondary school called "Les Aiglons". His sister Vanessa has completed her curriculum in the same school and is considering starting university in the United States, at Vassar College.



---

### CERTIFICATE OF ACCURACY

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK )

Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____
Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

_____
Notary Public

MOHAMMED N. MUJUMDER
Notary Public, State of New York
No. 03-4902808
Qualified in Bronx County
Commission Expires Feb. 26, 2018

Translation from French                                                                                                2

Tuition fees at "Les Aiglons" amount to CHF 66,370.00 per year, and the cost of the university training that Vanessa intends to start at Vassar College (United States) is approximately USD 57,070.00 per year (including room rental), representing CHF 55,571.10 at the current exchange rate (USD 1 = CHF 0.973735 on the day of the trial hearing).

After the visitation rights were suspended for some time, the children have resumed contact with their father for around two years. The organization of the visits can be called stormy. Planning the trips to the United States has often raised issues during the proceedings, generating all sorts of temporary injunctions. This being said, it seems that a "channeled" visitation right is beneficial to the parties concerned.

All the witnesses have praised the way the Petitioner takes care of her children, devoting most of her time to them and giving them an exemplary education.

C.-         The personal and material situation of the parties is as follows:

a) The Petitioner is a housewife. Before the wedding, she was a model. She has not worked in this field since her union with the Defendant. Resuming this activity can hardly be considered; in addition to the testimonies, this is shown by a letter from the agency managing the Petitioner's interests in this area. On the other hand, the Petitioner has no vocational training and has not had any other jobs, except for that of *personal assistant* to her parents-in-law - which is now terminated. Until 2011, she has earned a monthly income ranging from CHF 9,000.00 to CHF 10,000.00 with this job. However, this activity was closely linked to the Petitioner's family relationships with her parents-in-law and depended on their good will; as a matter of fact, her job has come to an end.

b) The current professional situation of the Defendant is unknown to the Court, for he has not shown any interest in these proceedings for some time; therefore, some exhibits have never been filed with the Court. He is now domiciled in the United States and has started a new life with his new wife - the divorce of the parties having been entered in Connecticut in



## CERTIFICATE OF ACCURACY

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK )

        Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages.  I am competent to translate from French to English.  I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____
Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

_____
Notary Public

MOHAMMED N. MUJUMDER
Notary Public, State of New York
No. 02-49E2805
Qualified in Bronx County
Commission Expires Feb. 26, 2018

Translation from French                                                                                                                         3

2008, in spite of these proceedings, which were then pending. Apparently, he has had and adopted several children, with a total number of eight descendants, six of whom live with him.

      This being said, the information obtained, in particular through the expert report ordered for this trial, allowed to establish that the Defendant is the sole beneficiary of a US trust jointly controlled by the Defendant and his father. According to the Terrier expert report, the average income of the trust, collected by the Defendant between 1999 and 2006, amounts to USD 4,551,997.00. The tax rate relating to this income ranges from 15% to 40%. Therefore, the net income generated by this trust alone ranges between USD 3,869,197.00 and USD 2,731.200.00 (i.e. between CHF 3,767,573.00 and CHF 2,659,465.00, at the current exchange rate), depending on the tax rate.

      c) When living together, the spouses had a comfortable lifestyle. On several occasions, for example, the Defendant invited forty-five children of the village for outings during which he handed out his largesse, ostentatiously offering attractions and distributing gifts. The spouses had a luxury car and travelled frequently. The Defendants, who initially lived in a chalet owned by the Defendant's mother, later moved into a high-standing chalet built according to their wishes, where they lived until their *de facto* separation.

      At that time, the Petitioner could freely use the different second homes co-owned by the Defendant - through his trust - and costly facilities were made available to her, such as trips in private jet planes or helicopters, or several yachts with the *ad hoc* staff. The family was then fully supported by the Defendant.

      In spite of their life of ease, the Defendant liked to "cry poverty" around the village.

D.-      The divorce of the parties was pronounced in the State of Connecticut on May 27, 2008. A copy of the decree, apostilled pursuant to the Hague Convention, was filed at the court clerk's office of this Court.



---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK  )
              ) SS:
COUNTY OF NEW YORK )

      Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

Notary Public

MOHAMMED N. MUJUMDER
Notary Public State of New York
No. 03 4BC2808
Qualified in Bronx County
Commission Expires Feb. 26, 2018

Translation from French                                                                                                      4

E. -         According to expert Terrier's findings, the Petitioner's claim against the Defendant as a result of the liquidation of the matrimonial regime of property rights amounts to CHF 806,560.00.

F. -         According to that expert report, the Defendant was the beneficiary of two occupational pension schemes (2nd pillar) with the "Zurich" insurance company, the value of which amounted to CHF 55,020.55 and CHF 49,594.15 respectively as at September 30, 2002.

        In a letter of May 30, 2012, the Petitioner informed the Court that the assets relating to those policies had been transferred by "Zurich" to the LPP substitute pension fund, while producing the relevant correspondence.

G.-         a) Michele STEWART nee BOUMAN started a divorce action with unilateral petition by way of a petition for conciliation sent on October 17, 2000 to the Justice of Peace of the Ollon Circle.

        b) In a petition dated December 7, 2000 to the District Court for Eastern Vaud, the Petitioner mainly claimed that the divorce of the parties be pronounced (I), that parental authority on children William Pierce IV and Vanessa Marie be granted to her (II), that the Defendant be condemned to pay a monthly maintenance contribution in favor of each of his children of CHF 5,000.00 until the children have reached the age of 10, CHF 6,000.00 from that age and until the children have reached the age of 15 and CHF 7,000.00 from that age and until the children are of age or financially independent, such contributions being indexed (III), that the Defendant be condemned to pay a monthly maintenance contribution in her favor of CHF 10,000.00 until William reaches the age of 10, of CHF 8,000.00 from that time and until William reaches the age of 16, and then of CHF 5,000.00 from that time and until the Petitioner gets her AVS or "second pillar" retirement pension benefits, such contribution being indexed (IV), that the matrimonial regime of property rights of the spouses be liquidated (V), and finally, that any "second" or "third pillar" retirement funds holding any of the Defendant's assets be ordered to transfer half of said assets to an occupational pension scheme in the Petitioner's name (VI).



---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK   )
                                    ) SS:
COUNTY OF NEW YORK )

        Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages.  I am competent to translate from French to English.  I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____                        Sworn before me this
Kannan Vasudevan                                     17th day of February, 2015
Trustforte Language Services

                                                                    _____
                                                                    Notary Public

MOHAMMED N. MUJUMDER
Notary Public, State of New York
No. 03-4962808
Qualified in Bronx County
Commission Expires Feb. 26, 2018

Translation from French                                                                                            5

        In his answer of February 5, 2001, the Defendant claimed that the Petitioners claims be dismissed and by way of a counter-claim, he requested that the divorce of the parties be pronounced (I), that parental authority and custody over children Vanessa and William be granted to him (II), that the Petitioner be condemned to pay a monthly maintenance contribution in favor of each of her children of CHF 1,400.00 until the children have reached the age of 10, CHF 1,450.00 from that age and until the children reach the age of 15 and CHF 1,500.00 from that age and until the child is of age or is financially independent (III), that said alimonies be indexed according to the CPI (IV), that the pension funds of the spouses in the United States and Switzerland be divided according to indications to be provided later in the proceedings (V), and finally, that the matrimonial regime of property rights of the spouses be dissolved and liquidated (VI).

        In determinations dated April 23, 2001, the Petitioner requested that the Defendant's claims be dismissed.

        c) The interim situation generated numerous decisions, mainly on the custody over the children and the visitation rights. In particular, custody over children Vanessa and William was granted to their mother in a temporary relief order of July 23, 2001.

        d) The preliminary hearing was held on March 21, 2002, in the presence of the parties and their counsels. On this occasion, the Petitioner amended her claims in the sense that claim I for a divorce became a subsidiary claim, replaced by a claim I for a separation from bed and board; her claim III was also amended so that the Defendant be condemned to pay an overall monthly maintenance contribution of CHF 21,000.00 for all the family, plus family allowances, and claim IV was amended so that the matrimonial regime of property rights of the spouses be dissolved, liquidated and replaced by the regime of separate property, it being pointed out that claims II to VI of her petition of December 7, 2000 were maintained as subsidiary claims.

        The Defendant requested that the amended claims be dismissed, and that the Petitioner be condemned to pay for the judicial costs and expenses.

        e) On February 11, 2010, Michele STEWART petitioned to amend her claims, given the new facts that have appeared since the filing of her divorce petition. This request



---

### CERTIFICATE OF ACCURACY

STATE OF NEW YORK   )
                                        ) SS:
COUNTY OF NEW YORK )

        Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages.  I am competent to translate from French to English.  I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____
Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

_____
Notary Public

MOHAMMED N. MOJUMDER
Notary Public, State of New York
No. 03-4962868
Qualified in Bronx County
Commission Expires Feb. 28, 2018

Translation from French                                                                                6

was accepted and the Petitioner filed additional claims after amendment, dated July 5, 2011. A further preliminary hearing was scheduled for October 20, 2011.

f) In a letter of October 18, 2011, the Petitioner completed claim V, requesting that the Defendant be recognized as the Petitioner's debtor and forthwith pay an amount of CHF 806,560.00.

g) The trial hearing was held on May 3, 2012, in the presence of the Petitioner, assisted by Mr. Heider, attorney-at-law; the Defendant, although duly summoned by way of a writ dated of November 17, 2011 delivered to the addressee on December 6, 2011 as per acknowledgement of receipt, failed to appear, either personally or through counsel.

During said hearing, the following persons were heard:

1) Stephane TERRIER. Heard as an expert for the liquidation of the matrimonial regime of property rights, he confirmed all the findings contained in his report and complementary report;

2) Laurent NORMAND. Heard as a witness, he reported, in substance, that the parties had a very comfortable lifestyle. However, the Defendant was pleading poverty during that period. He explained that the Petitioner could not resume her activity as a model, for she had not worked in this environment for years. Furthermore, the Petitioner has no specific profession or vocational training. He confirmed that the Petitioner had lost her job in 2011. When speaking of the parties' separation, he pointed out that the Defendant had adopted an unreasonable behavior '"according to the rules of marriage". Regarding the Petitioner, he explained that she had entirely devoted herself to her children's education, in an intensive and remarkable manner, at the expense of her personal life.

3) Su Yin SOEN. Heard as a witness, she reported that the spouses had a high lifestyle (travel, luxury cars, outings organized by the Defendant with many children for whom he paid everything) and showed off their wealth, although it was said in the village that the Defendant used to complain about his financial position. She explained that it was impossible for the Petitioner to resume her activity as a model, for she would need to be constantly available, which was inconsistent with her duties as a mother. She also reported that the Petitioner's job for her parents-in-law was not at all secure, and that as a matter of fact



---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF NEW YORK )

Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

Notary Public

MOHAMMED R. MUJUMDER
Notary Public State of New York
No. 02-4962908
Qualified in Bronx County
Commission Expires Feb. 25, 2018

Translation from French                                                                                                    7

she had lost it since then. After the parties separated, the Defendant behaved unreasonably, showing off his new girlfriend without finesse, which had upset the children. She confirmed that it was important for the children to be able to complete their school curriculum at "Les Aiglons", described as the "Rolls-Royce of schools", so that they could later study in the United States. Regarding the relations between the children and the Defendant, she pointed out that the children were "drowned in a horde of children, without being able to have a specific relationship with their father", explaining that their relation was essentially based on a virtual link, via online games. About the Petitioner, she praised her qualities as a mother and said that she had renounced having a personal life to take care of her children.

    4) Caroline GANZ-DE MEYER. Heard as a witness, she reported that the parties had at that time a life of great ease in Villars. About the Petitioner's situation, she confirmed that she could no longer work as a model and that her job with her parents-in-law had come to an end. She also pointed out that it was necessary for the children to complete their school studies at "Les Aiglons", for the sake of their stability. She spoke of her project to open a tea-room with the Petitioner, while adding that said project had been given up, for it did not have the expected returns.

    The Petitioner requested a decree by default.

G.-    In a temporary relief order of December 17, 2008, the President of this Court instituted a curatorship under Article 146 of the Civil Code in favor of children Vanessa Marie Stewart and William P. Stewart IV. On July 2, 2010, the Justice of Peace of the District of Aigle appointed Mrs. Laure Chappaz, attorney-at-law, as the curator of the above-named children. In a decision of March 28, 2011, the judge of this Court fixed at CHF 35,825.00, incl. VAT, the compensation granted to Mrs. Chappaz for her activity from November 27, 2008 to December 7, 2010.

    In a letter of May 7, 2012, the children's curator sent an operating list for the calculation of her compensation for the unaccounted period, i.e. until the hearing day.

**LAW:**

1.-    This action, which was brought as provided by law, is admissible as such.



**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK  )
                  ) SS:
COUNTY OF NEW YORK )

    Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

Notary Public

MOHAMMED N. MUJUMDER
Notary Public, State of New York
No. 02-4962808
Qualified in Bronx County
Commission Expires Feb. 25, 2018

Translation from French                                                                                                      8

2.-            On the opening day of the proceedings, both parties - who are foreign citizens - were domiciled in Villars-sur-Ollon, within the jurisdiction of this Court; the international jurisdiction of this Court stems from Articles 59 lit. a and b and 63 par. 1, respectively 64 of the Federal Act on Private International Law (LDIP).

            Swiss law is applicable by virtue of Articles 54 par. 1 lit. a, 61 par. 1, 63 par. 2, 82 par. 1, 83 par. 1 and 85 par. 1 of the LDIP.

3.-            The issue of jurisdiction and law being solved, what has to be done first is to determine the nature of these proceedings. Indeed, notwithstanding pending proceedings in Switzerland as a result of the Petitioner's filing a unilateral divorce petition on October 17, 2000, the Defendant started parallel proceedings for the same purpose in Connecticut (United States of America); said proceedings ended up with a divorce decree entered on May 27, 2008. Said decree, apostilled pursuant to the Hague Convention of October 5, 1961, was notified to the secretary's office of this Court. The issue at stake is therefore to determine whether this decision is to be recognized and, as the case may be, whether these proceedings should be considered as residual proceedings complementing the divorce. In this respect, it should be recalled that this Court's jurisdiction to recognize a foreign judgment stems from Article 29 par. 3 of the LDIP.

            Failing any international or bilateral convention between Switzerland and the United States, the LDIP is applicable to the recognition of a divorce decree. Under Article 65 of the LDIP, foreign decisions of divorce or separation shall be recognized in Switzerland if they were rendered in the State of domicile or habitual residence or in the State of citizenship of one spouse or if they are recognized in one of those States (par. 1). However, a decision rendered in a State of which neither spouse, or only the plaintiff spouse, is a citizen shall be recognized in Switzerland only if, at the time the petition was filed, at least one spouse was domiciled or had his place of habitual residence in that State and the defendant spouse was not domiciled in Switzerland (par. 2 lit. a), if the defendant spouse has submitted to the jurisdiction of the foreign court without reservation (par. 2, lit. b), or if the defendant spouse has expressly consented to the recognition of the decision in Switzerland (par. 2, lit. c). Furthermore, the conditions of Articles 25-29 of the LDIP must be met.



### CERTIFICATE OF ACCURACY

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK )

            Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____
Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

_____
Notary Public

MOHAMMED N. MUJUMDER
Notary Public, State of New York
No. 02-4962808
Qualified in Bronx County
Commission Expires Feb. 28, 2018

Translation from French                                                                                        9

In this case, it is established that the Petitioner has not taken part in the proceedings started in the United States. Upon reading the letter of November 10, 2008, it appears that her default was a deliberate choice, aiming at restricting the jurisdiction of the US court in pronouncing the divorce. In that same letter, the Petitioner suggests that due to the decree entered, the pending proceedings in Switzerland should be considered as proceedings complementing the divorce decree; incidentally, she points out that there is a mistake in the US decree, as the date of the wedding - noted *11/20/1990* in the challenged decree - is inaccurate (the marriage certificate certifying that the ceremony was celebrated in Brussels on November *24*, 1990). After correction, the Petitioner merely withdrew her claim I for a divorce, considering that said claim was now pointless, given the decree entered in the Connecticut. In view of the foregoing, this withdrawal is tantamount to an express consent to the recognition of the decision in Switzerland, pursuant to Article 65, par. 2 lit. c of the LDIP.

Furthermore, the conditions of Articles 25-29 of the LDIP are met: the divorce decree, now final and enforceable, was entered by an authority having jurisdiction in the State of origin and is not contrary to the Swiss material public order pursuant to Article 27 par. 1 of the LDIP; in addition, the parties have not asserted a breach of the Swiss procedural public order under Article 27 par. 2 of the LDIP, and the necessary documents were produced.

Consequently, the above-mentioned decision should be recognized, and therefore - the divorce having been pronounced - the issues remaining to be addressed are the accessory effects of the divorce.

4.-          Firstly, the court is to determine the fate of the minor children. Under Article 133 of the CC, the court grants parental authority to one of the parents and rules, according to the provisions governing the effects of filiation, on the personal relations between the child and the other parent as well as the maintenance contribution payable by said parent (par. 1). When awarding parental authority and ruling on personal relations, the court shall take into account all and any material circumstances for the child's welfare (par. 2).

a) Article 133 par. 2 of the CC sanctions the case law of the Federal Court whereby the child's interest is the paramount consideration for granting parental authority and custody, and not the interest of the father and mother. The child must enjoy stable living



---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK )

        Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages.  I am competent to translate from French to English.  I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____                    Sworn before me this
                                           17th day of February, 2015
Kannan Vasudevan
Trustforte Language Services                _____
                                           Notary Public

MOHAMMED N. MOJUMDER
Notary Public, State of New York
No. 02 4982805
Qualified in Bronx County
Commission Expires Feb. 28, 2018

Translation from French                                                                                                           10

conditions and have a parent that takes care of him and raises him personally. What is important is knowing which parent will likely have the best capacity to support the child, which parent will provide the child with the best attention and the affection needed for his physical, emotional and intellectual development, and which parent will be most ready to encourage contact with the other parent. Among the major criteria taken into account, there may be the relationships between the parents and the child, the parents' personality and lifestyle, including the ability to take care of the child personally, as well as the child's personality and, if necessary, the existing relationships among several children. The court entering the divorce cannot content itself, for stability reasons, with awarding parental authority to the parent who has been granted custody over the child during the proceedings, for this would mean denying the equivalence of the various contributions to the maintenance of the family, keeping the task allocation adopted during the marriage and renouncing to determine the child's interest with reference to the future. However, this criterion has a specific weight where both parents have similar capacities to educate and take care of the children (Message of the Federal Council of November 15, 1995, FF 1996 I *et seq.*, esp. no. 233.61 p. 126 *et seq.*; Federal Court decision (ATF) 117 II 353 ground 3; 115 II 206 ground 4a; 114 II 200 ground 5; 112 II 381 ground 3; 111 II 225 ground 2).

    b)  The custody over the children having been awarded to their mother on a provisional basis, the children reside in Switzerland. They study in an international school which is famous for the quality of its teaching. During a personal interview with William and Vanessa, the President of this Court was able to observe their perfect education and excellent school results. It appears that the children live in a stable environment, with a mother who gives them a framework that enhances their personal development and happiness. As a matter of fact, her parental skills were praised by the different witnesses heard at the hearing, and there are no reasons for their allegations to be set aside.

    Regarding the Defendant, one can strongly doubt his capacity to offer such a propitious and appropriate environment for his children's education. The proceedings have demonstrated that the Defendant has the attitude of a quibbler with most anything; he usually makes unilateral decisions that he tries to impose on his children and the Petitioner, disregarding any legitimate qualifications they may express. Planning the right of access proved extraordinarily difficult - which is easily demonstrated by the impressive amount of court decisions entered in this respect, to such an extent that a curator had to be appointed and



---

## CERTIFICATE OF ACCURACY

STATE OF NEW YORK  )
                   ) SS:
COUNTY OF NEW YORK )

    Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages.  I am competent to translate from French to English.  I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

Notary Public

MOHAMMED N. MUJUMDER
Notary Public, State of New York
No. 01MU6292808
Qualified in Kings County
Commission Expires Feb. 28, 2018

the visits interrupted for a while, with the Defendant ignoring the court decisions as well as the best interests of his children (in particular with respect to school).

Although the stability criterion should not lead the Court to confirm the interim injunction at once, it nonetheless commands that the children should be as little upset as possible, as the case may be by avoiding a change to their environment if not necessary, after having examined other criteria, for awarding parental authority. In this case, considering that the children enjoy a most propitious environment for their development and that the place where they live is the center of gravity of their personal interests, it does not seem opportune to award parental authority and custody over them to their father, who does not seem able to offer the stability needed for the children's harmonious development. Consequently, parental authority and custody over William and Vanessa must be granted to their mother, whose skills have been ascertained.

c) Article 273 par. 1 of the CC provides that non-custodial parents and their minor child are mutually entitled to have such personal relationships as are commanded by circumstances. The right to personal relationships aims at protecting the existing bond between parents and children (Hegnauer, Droit suisse de la filiation, *op. cit.*, n. 19.20, p. 116). In this respect, the Federal Court points out that it is unanimously admitted that the child's relationship with both parents is essential and that it may be decisive in the child's quest for identity (ATF 127 III 295 g. 4a; ATF 123 III 445 g. 3c, JT 1998 I 354 g. 3c, p. 360). Maintaining and developing this bond being obviously profitable for the child, personal relations should therefore be privileged, unless the child's welfare is in jeopardy.

The importance of personal relationships and the way they are exercised should be appropriate given the situation, in other words, fairly take into account the specific circumstances of the case (Hegnauer. *op. cit.*, n. 19.09, p. 111). The child's welfare is the most important factor of appreciation (ATF 127 III 295 g. 4a mentioned above). One should also consider the situation and interests of the entitled party - his/her relation with the child, personality, place of residence, free time, environment. Specific conditions to exercise the visitation rights may be imposed (Hegnauer, *op. cit.*, n. 19.16, p. 114).



---

## CERTIFICATE OF ACCURACY

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK )

        Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages.  I am competent to translate from French to English.  I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____
Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

_____
Notary Public

MOHAMMED N MANGUMSER
Notary Public, State of New York
No. 01-MA6280S
Qualified in Bronx County
Commission Expires Feb. 26, 2018

In this case, as was seen before, the right of access has proved extremely problematic. Given the circumstances and in order to avoid problems in the future, a strict framework should be set up for a peaceful and regular exercise of that right. The issue at stake is the welfare of the children, who need to meet their father while adjusting those visits with their school life. The children should not suffer the consequences of their father's sudden changes of mind, be put under pressure by their father or be placed in an awkward position between their parents.

The children's curator has given her findings in this regard. In addition to suggesting the proportion and partition of the visitation rights, with half of the school holidays granted to the Defendant, her findings essentially recommend that the requirements relating to the children's school studies should be taken into account (return of the children to their usual domicile - currently, Switzerland - five days before the beginning of lessons), and that the Defendant should submit a final holiday schedule six months in advance and bear all the children's travel expenses, unless the Petitioner spends the other half of the holidays with her children in the United States, in which case she would have to bear half of their travel expenses.

The curator's findings correspond with the children's welfare and with the specific requirements of this case; they should therefore be admitted (subject to purely formal improvements). In particular, the fact that the Defendant should bear the children's travel expenses is in accordance with the practice whereby the non-custodial parent usually comes and fetches the children where they are and takes them back there, while bearing the travel expenses. The children being old enough to travel by themselves, paying the travel expenses will be sufficient; the Defendant should not be required to come and fetch them personally. On the other hand, it is obvious that in the event the Petitioner happens to take holidays in the United States with her children at a time close to the time when the Defendant exercises his visitation rights, she should bear half of the children's travel expenses.

d) The maintenance contribution payable by the non-custodial parent should then be determined. Under Article 285 par. 1 of the CC, the maintenance contribution should correspond to the child's needs and to the financial circumstances and resources of the father and the mother; it should also take due account of the child's assets and income and of the



---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF NEW YORK )

Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

Notary Public

Translation from French                                                                                        13

extent of care provided to the child by the non-custodial parent. These different criteria should be taken into consideration; they have a mutual influence on one another. Therefore, the child's needs should be examined in relation with the three other criteria and the maintenance contribution should always be reasonably commensurate with the debtor's standard of living and contribution capacity (ATF 116 II 110 ground 3a p. 112). The parent whose financial capacity is higher than the other is also bound, according to the circumstances, to meet all the financial needs if the other parent essentially meets his/her obligation toward the child by way of a contribution in kind (ATF 120 II 285 ground 3a/cc p.p. 289/290). No calculation method, however, is imposed by law in relation with maintenance contributions (ATF 128 III 411 ground 3.2.2 p. 414). The amount of such a contribution is left, for an important part, to the court's discretion (art. 4 of the CC).

The average statistical maintenance needs contained in the *"Recommendations to determine maintenance contributions for children"* published by the Youth Office of the canton of Zurich (see Breitschmid, Commentaire balois, 2nd ed., n.6 *ad art.* 285 of the CC; www.lotse.zh.ch) may be a starting point to determine a child's needs in a specific case. However, these figures should be made more accurate by taking into account the child's specific actual needs, as well as the standard of living and contribution capacity of the parents (ATF 116 II 110 ground 3a p. 112). In the event of a particularly well-off position, it is not necessary to consider all the contribution capacity of the parents to determine the maintenance contribution to the children. The starting point should not be the highest standard of living that can be reached with a given income, but the actual lifestyle of the parents. In certain circumstances, moreover, it may be justified, for pedagogical reasons, to grant a lower standard of living to the child than that of the parents (ATF 116 II 110 ground 3b pp. 113/114). Therefore, the amount of the contribution should not be simply calculated in a linear manner according to the financial capacity of the parents, without taking into account the child's actual situation (ATF 120 II 285 ground 3b/bb p. 291; decision 5C66/2004 of September 7, 2004, ground 1.1). Furthermore, where several children are entitled to a maintenance contribution, the principle of equal treatment between them should be complied with (ATF 127 III 68 g. 2c p. 70; ATF 126 III 353 g. 2b p. 357).

In this case, the debtor is in an extremely favorable financial position. Contrary to his repeated allegations, it was established during the investigation proceedings that the



---

## CERTIFICATE OF ACCURACY

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK  )

Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

Notary Public

MOHAMMED H. MONAMDER
Notary Public, State of New York
No. 01-4952006
Qualified in Essex County
Commiss. in Expires Sep. 26, 2018

Translation from French                                                                     14

gross annual income generated by his trust is not lower, as an average, than USD 2,731,200.00, i.e. *circa* USD 227.600.00 per month, representing around CHF 221.622,00 at the current exchange rate (USD 1 = CHF 0.973735 on the dial hearing day); this does not include the income that might be generated by a paid activity - estimated at around CHF 700,000.00 per year for the purpose of the interim injunction, which was confirmed by the Federal Court in its decision of November 11, 2004. It should also be observed that the Defendant's trust includes assets with a value exceeding USD 90,000,000.00 and that the capital gains (short-term capital profit) increasing the volume of assets appeared to be extremely high (up to USD 16,635,724.00 in 2000). The children's needs should be determined by considering both the standard of living they have had until now - in an appropriate manner - and their needs.

The children's needs include their maintenance *stricto sensu* (housing, clothes, food, care); they also include any expanses relating to their personal situations (due account shall be taken, in particular, of their school expenses). Both Vanessa and William have so far been educated in private institutions, which are rather expensive. This situation - which is trot unusual for children coming from a wealthy class - is essentially justified by opportunity reasons, as the children, who are US citizens, intend to continue their studies in the United States. A curriculum in a bilingual school, such as the one they have attended until now, is a big asset for admission to the best American colleges. As a matter of feet, compared with Switzerland, university fees are much higher in the United States. For the time being, the expenses generated by William's education amount to CHF 66,370.00 per year; and the cost of the university training that Vanessa intends to start at Vassar College (United States) amounts to some USD 57,070.00 per year (including room rental), representing CHF 55,571.10 at the current exchange rate (USD 1 = CHF 0.973735 on the trial hearing day). These expenses are justified in light of the children's standard of living and of the coherence of their academic background.

According to the Zurich tables - available on http://www.lotse.ch.ch - the average cost of a child over 13, coming from a family of more than 3 children (the Defendant seems to be the father of 8) amounts to CHF 1,675.00. Incidentally, it should be pointed out



---

## CERTIFICATE OF ACCURACY

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK )

Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages.  I am competent to translate from French to English.  I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____                     Sworn before me this
Kannan Vasudevan                             17th day of February, 2015
Trustforte Language Services

                                             _____
                                             Notary Public

MOHAMMED N. MOJUMDER
Notary Public, State of New York
No. 02 4952608
Qualified in Bronx County
Commission Expires Feb. 28, 2018

that the cost of living in Zurich is at least equivalent to the one in Villars, where the children are domiciled. This amount, used as a basis for the calculation, should however be substantially increased in order to take into account the children's lifestyle, which is certainly higher than the average. In addition, it should be considered that the children will continue university studies. A study of the Federal Statistics Office, made in 2009, established that the average monthly budget of a student amounted to CHF 1,850.00 approximately (study available on www.bfs.admin.ch); the website of the Swiss University Rectors Conference (www.crus.ch) reports that the annual budget of a student in Switzerland ranges between CHF 21,000.00 and 31,000.00 per year, depending on the places and personal aspirations. Based on these data, it seems fair to set the children's basic needs at CHF 2,500.00 per month, considering their standard of living. This figure should be added to their education expenses, which are much higher than those of public education in Switzerland. Given the circumstances, it seems appropriate to determine that the needs of the children amount to CHF 8,030.00 for William ([CHF 66,370.00 / 12] + CHF 2,500.00) and CHF 7,130.00 for Vanessa ([CHF 55,571.10 / 12] + 2,500.00), in rounded-up figures. These needs should remain stable until they come of age, or even until they complete appropriate training pursuant to Article 277 par. 2 of the CC, so that there is no need to provide for steps according to the children's ages.

This being set forth, it should be pointed out that the alimonies are calculated in Swiss francs, while Vanessa is about to start university in the United States and William - although he has not made a final decision yet - should do the same after school. The foreign exchange market is currently quite volatile and the exchange rates may vary substantially - within a few years, the variation of the rate between the Swiss franc and the dollar has reached around 60% (2006-2012 compared rates). Considering the situation, the risk of such foreign exchange variations should not be borne by the children, for the sake of the perenniality of their academic career. Therefore, in application of Article 286 par. 1 of the CC, the amount of the maintenance contribution should be indexed to foreign exchange variations, provided that the children's expenses are denominated in US dollars. Indexation on the CPI does not seem suitable in this case.



---

## CERTIFICATE OF ACCURACY

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF NEW YORK )

Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

Notary Public

MUHAMMED R. NOORUDDEEN
Notary Public, State of New York
No. 01N06178016
Qualified in Bronx County
Commission Expires Feb. 20, 2016

Translation from French                                                                                          16

    Furthermore, considering that only the Defendant has an income - and a comfortable one -, he will have to fully contribute to the financial maintenance of his children, the Petitioner assuming the daily maintenance of the children and a care contribution in kind.

6.-    Mr. Terrier's report, which is full and convincing, has convinced the Court. There are no reasons for not keeping to it. Therefore, the expert's findings are adopted by the Court. According to the expert's determinations, the Petitioner's claim against the Defendant for the liquidation of the matrimonial regime of property rights amounts to CHF 806,560.00, an amount of which the Defendant shall forthwith become the debtor when the decree becomes final and enforceable.

    As regards the income generated by the Defendant's trust, reference is made to the proceedings opened in the United States in order to determine the Petitioner's rights on said income, this Court having no jurisdiction on that matter (Art. 149b of the LDIP).

7.-    As regards the occupational pension assets of the parties, the Terrier expert report observes that the Defendant then had two occupational pension planning policies with the "Zurich" insurance company, the value of which amounted to CHF 55,020.55 and CHF 49,594.15 respectively, as at September 30, 2002. In a letter of May 30 2012, the Petitioner's counsel informed that these benefit assets had been transferred to the LPP substitute pension fund. No certificate on the feasibility of the partition was produced.

    Under Article 404 of the Swiss Code of Civil Procedure (CCP/CH), the issue of occupational pension schemes must be examined according to the procedural provision in force before the entry into force of the CCP - the proceedings being pending since October 17, 2000. In particular, Articles 141 and 142 of the CC on the procedure regarding the partition of withdrawal benefits in the event of a divorce remain applicable.

    In the event of a divorce, Article 122 par. 1 of the CC provides that where at least one or both spouses belong to an occupational pension scheme and neither spouse is receiving pension benefits, each spouse is entitled to half of the withdrawal benefits of the other spouse calculated over the duration of the marriage in accordance with the Federal Act of 17 December 1993 on the Vesting Benefits (FAVB).

    The partition of withdrawal benefits is carried out in accordance with Articles 22 to 22c of the FAVB. Failing any agreement (or where the parties failed to produce a



---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK   )
                ) SS:
COUNTY OF NEW YORK )

    Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

Notary Public

Translation from French                                                                 17

certificate of the relevant pension finds confirming the feasibility of said agreement; ATF 132 V 337 ground 1.1 p. 340), the court having jurisdiction in the place of the divorce orders how the withdrawal benefits are divided. Upon entry into force of the partition decision, the case is transferred *ex officio* to the court having jurisdiction under Article 73 par. 1 of the Act on occupational pension provision (LPP) (Art. 142 par. 1 and 2 of the CC in connection with Art. 25a par. 1 of the FAVB). Said court is bound by the partition scheme provided in the divorce decree and must only carry out the partition (ATF 132 HI 401 ground 2.2 p. 404; 132 V 337 ground 2.2 p. 341). Failing any agreement in this case, the procedure is as follows: upon entering a final and enforceable decree, the case shall be referred to the Court of Social Insurance of the Cantonal Court in order to carry out the partition of the withdrawal benefits in equal shares, in accordance with Article 122 of the CC.

8.-        The Petitioner has claimed a maintenance contribution of CHF 10,000.00 per month until the elder child is no longer dependent, of CHF 12,000.00 per month as of that date and until the younger child is no longer dependent and of CHF 15,000.00 per month as of that date.

Under Article 125 of the CC, if a spouse cannot reasonably be expected to provide for his or her own maintenance, including an appropriate level of retirement provision, the other spouse must pay a suitable contribution (par. 1). In deciding whether such a contribution is to be made and, if so, in what amount and for how long, the court must consider in particular the factors listed in paragraph 2 of said provision. The amount of the alimony is left to the discretion of the court, in accordance with the principles of justice and equity (art. 4 of the CC).

Two principles are set forth under Article 125 of the CC: as far as possible, each spouse must provide for his or her maintenance after the divorce; he or she must be encouraged to acquire his or her own financial independence. In order to reach that autonomy, which may have been jeopardized by the marriage, one of the parties may nonetheless be bound to provide a financial contribution; the spouses must assume together the consequences of the task division agreed during the marriage (principle of solidarity). Thus conceived, the maintenance obligation essentially rests on the needs of the claiming spouse; it depends on the level of autonomy that can be expected from said spouse, i.e. his or her capacity to get involved in professional life or to resume a paid job that had been interrupted as a result of



---

## CERTIFICATE OF ACCURACY

STATE OF NEW YORK   )
                   ) SS:
COUNTY OF NEW YORK )

        Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages.  I am competent to translate from French to English.  I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

_____
Notary Public

MOHAMMED N. MUJUMDER
Notary Public, State of New York
No. 01MU62808
Qualified in Bronx County
Commission Expires Feb. 28, 2016

the marriage, in order to provide for her decent maintenance, In this respect, just as in setting the amount and duration of the contribution, the court must rest on the factors listed - without limitation - in Article 125 par. 2 of the CC. As regards more specifically the financial position (ch. 5), the actual income of the spouses must first be considered, but also what the spouses could earn with some goodwill or if they made the efforts that could reasonably be expected from them (ATF 127 III 136 ground 2a and quoted references).

As regards the duration, the maintenance obligation must be paid only during the time that shall be necessary for the spouse to recover his or her financial autonomy, including with respect to the pension scheme. The upper limit of decent maintenance is equal to the prevailing matrimonial standard of living before the divorce, where the length of the marriage has sustainably affected the financial position of the party needing a maintenance contribution (Hans Hausheer/Annette Spycher, Unterhalt nach neuem Scheidungsrecht, Bern 2001, no. 05.116; Franz Werro, L'obligation d'entretien apres le divorce dans le Code civil revise, in Renate Pfister-Liechti [ed.], *op. cit.*, pp. 35 *et seq.*, esp. pp. 39-44; see also ATF 115 II 6 ground 3 and 109 II 87 ground 3c).

In this case, the Petitioner was a model when she married. She has no vocational training. After the marriage, she gave up any paid activity and entirely devoted herself to her home. However, she worked as a personal assistant, as of 2009, for her father-in-law, earning an average income of *circa* CHF 10,000.00 per month; she mainly did secretarial work and travel bookings. This job ended on January 15, 2011 and she has not worked since then. During the marriage, the spouses had a high-level lifestyle, in line with the wealth of the Defendant and his family. The spouses had several residences in the Caribbean and the United States, a private jet plane, a helicopter and several yachts, not to mention luxury cars and a prestigious residence in Villars, where the couple was domiciled with the children while living together. Given the foregoing, it cannot be denied that the marriage - that lasted oven 9 years until the separation date of the parties - had an effective and lasting influence on the financial position of the Petitioner who, while giving up her job as a model to devote herself to her family, has found herself pushed into the select circle of



**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK   )
                     ) SS:
COUNTY OF NEW YORK )

Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages.  I am competent to translate from French to English.  I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____
Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

_____
Notary-Public

MOHAMMED N. MOJUMDER
Notary Public, State of New York
No. 01-49L2800
Qualified in Bronx County
Commission Expires Feb 25, 2018

Translation from French                                                                                                    19

multimillionaires. As a matter of principle, the Petitioner's right to a maintenance contribution is established.

As regards the appropriate amount of maintenance contribution, in her request after amendment, the Petitioner alleges that her current annual budget amounts to CHF 397,000.00, out of which CHF 120,000.00 are allotted to the children's school fees. This amount can only be lower than the amount corresponding to her lifestyle during the marriage, her financial means having diminished after the separation. Therefore, it shall be admitted that the decent maintenance of the Petitioner, pursuant to Article 125 of the CC, is not lower than CHF 23,085.00 per month in rounded up figures ([CHF 397,000.00 - CHF 120,000.00] / 12).

The statement of facts shows that the Petitioner cannot provide for her maintenance by herself. Without any other vocational training than that of a model - a job that she has not done since her marriage - it is not reasonable to force her to resume a paid job which, as a matter of fact, would only generate a meager income. The fact that she has worked as a personal assistant, for quite a substantial amount, does not alter this appreciation; the Petitioner having worked for her parents-in-law, there are no indications that she could find a job under similar conditions on the market. Without any personal resources, the Petitioner is entitled to a maintenance contribution, limited in this case to the amount claimed by her, which is lower than the amount of decent maintenance set forth above. Considering the very high income of the Defendant (CHF 2,659,465.00 per year as a minimum amount), it is fair to grant the amounts claimed by the Petitioner.

One more thing to determine is the duration of the maintenance contribution. According to the circumstances, a life contribution cannot be excluded, within the limits of Article 130 of the CC. In this case, it was ascertained that the Petitioner could not provide for her maintenance or even properly resume a professional life. The doors of the fashion world are closed to her, which was confirmed by the evidence given by witnesses and the production by the Petitioner of an exhibit coming from a model agency. Without any professional experience or proper training and considering the age of the Petitioner, she cannot reasonably be ordered to take a new job. Incidentally, it shall be pointed out that the occupational pension scheme of the Petitioner, who has not worked for many years, is full of gaps. Under these



---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK   )
                                    ) SS:
COUNTY OF NEW YORK )

Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____
Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

_____
Notary Public

MOHAMMED N MOJUMDER
Notary Public, State of New York
No. 02 4952800
Qualified in Bronx County
Commission Expires Feb 26, 2018

Translation from French                                                                                        **20**

circumstances, the conditions are met to grant her an annuity - which was admitted by the Federal Court in quite a similar ease (FC, decision 5C.274/2001 of May 23, 2002).

9. -        The expenses relating to the children's representation in their parents' divorce proceedings are maintenance expenses pursuant to Articles 276 *et seq.* of the CC and include the curator's expenses and compensation, as well as the judicial costs and expenses (Art 6a par. 1 of the Rules on guardians and curators compensation of April 11, 1984: RS 211.2552, hereinafter RTu). The judgment ending the trial sets the amount of representation fees by indicating the curator's expenses and compensation, on the one hand, and the judicial costs and expenses, on the other hand, such expenses being divided between the parents according to the principles applicable in matters of maintenance duties (Art 6a par. 3 of the RTu). The curator having to provide services that correspond to his/her professional activity, he/she is entitled to a compensation specific to his/her profession. As regards attorney fees, the usual time sheet rate of CHF 300 may be applied.

In this case, Mrs. Chappaz has reported that she has devoted 14 hours to this case between January 10, 2011 and May 7, 2012 and has incurred CHF 89.00 of expenses. The time competed by Mrs. Chappaz seems accurate and justified, given the operations carried out. Consequently, fee compensation payable to Mrs. Chappaz shall be set at CHF 4,632.65, including VAT and expenses (14 x CHF 300.00 + CHF 89.50 + 8%).

Considering the financial means of each of the parents, 1/3 of the above compensation shall be borne by Michele Stewart and 2/3 by William P. Stewart III. By virtue of Directive No. 38 of March 23, 2009 of the Secretary's office of the Judicial Order, the curator's fees shall be paid by this Court, and reimbursement thereof shall be claimed from the parents, by installments as the case may be.

In addition, a divorce decree being entered, the curator should now be released from her assignment.

10. -        The judicial costs are set at CHF 43,656.15 for the Petitioner and CHF 53,603,95 for the Defendant. As for the expenses, the Petitioner's counsel has submitted fees amounting to 358,188.45 for the period between May 8, 2011 and November 30, 2011. The *ad litem* provision of CHF 20,000.00 that should have been paid by the Defendant to the Petitioner for the interim proceedings has never reached the Petitioner; therefore it shall not be taken into account.



---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK    )
                                      ) SS:
COUNTY OF NEW YORK )

Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages.  I am competent to translate from French to English.  I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____                                                Sworn before me this
Kannan Vasudevan                                                          17th day of February, 2015
Trustforte Language Services

_____
Notary Public

DEEPAUMEDH N. MAJUMDER
Notary Public, State of New York
No. 01 MA6289892
Qualified in Kings County
Commission Expires Feb. 26, 2018

Translation from French                                                                                     21

         The Defendant having lost in full, the Petitioner is entitled to all her expenses. The amount of attorney fees accounted for by Mr. Heider may be granted in full, as it does not exceed 20% of the litigation value in this case (Art. 5 par. 1 ch. 1 of the aTAv).

11.          -    The default fees payable in the event of a motion to set aside are set at CHF 14,373.50.
                                             * * *

         On these grounds,

         The Court,

I.-      **recognizes** the decree of May 27, 2008 entered by the Superior Court, Judicial district of Stamford/Norwalk, pronouncing the divorce of

         **Stewart, William Pierce III,** a US citizen, born on June 9, 1967 in New York, district of Richmond (United States of America), domiciled on the opening day of the action in Villars-sur-Ollon (Vaud)

         and

         **Stewart nee Bouman, Michele Henriette,** a Belgian citizen born on December 15, 1967 in Uccle (Belgium), domiciled on the opening day of the action in Villars-sur-Ollon (Vaud)

         it being pointed out that the date of the wedding contained therein, is inaccurate and should be corrected to read that the wedding of the parties was celebrated on November <u>24</u>, 1990;

II.-     **awards** parental authority and custody over children William Pierce IV, born on March 13, 1996 and Vanessa Marie, born on August 19, 1994, to their mother, Michele Henriette Stewart nee Bouman;

III.-    **says** that William Pierce III Stewart may have his children with him for half of school holidays, which shall be equally divided as agreed between the parents and the children, taking into account the children's school requirements and examinations;

IV.-     **says** that in the event William Pierce III Stewart's right of access is exercised during the second part of the summer, the children shall have to be back at their domicile no less than five days before school starts;



---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF NEW YORK )

         Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____                    Sworn before me this
Kannan Vasudevan                            17th day of February, 2015
Trustforte Language Services

                                            _____
                                            Notary Public

MOHAMMED N. MUJUMDER
Notary Public State of New York
No. 01 4862808
Qualified in Bronx County
Commission Expires Feb. 28, 2018

Translation from French                                                                                22

V.-        **says** that William Pierce III Stewart shall submit a final holiday schedule six months in advance and bear all the travel expenses of his children from their domicile to their holiday location and back;

VI.-       **says** that insofar as Michele Henriette Stewart nee Bouman shall stay in the United States during the other part of the holidays, he shall only bear half of the travel expenses and deliver to Michele Henriette Stewart nee Bouman the travel documents needed for the children's trip back to their domicile;

VII.-      **compels** William Pierce III Stewart to pay a monthly maintenance contribution, payable in advance on the 1st day of each month to Michele Stewart nee Bouman, until the children come of age, and then as of this date, to the children, in addition to family allowances, if any, upon entering a final and enforceable decree, in an amount of

        - CHF 8,030.00 (eight thousand and thirty Swiss francs) in favor of William Pierce IV and

        - CHF 7,130.00 (seven thousand one hundred and thirty Swiss francs) in favor of Vanessa Marie;

VIII.-     **says** that the maintenance contributions mentioned under point VII above shall be indexed on January 1 of each year, for the first time on January 1 of the year following the entry into force of the decree, according to the USD-CHF exchange rate, the reference index being that of the average rate of May 3, 2012 (USD 1 = CHF 0.973735);

IX.-       **says** that William Pierce III Stewart is the debtor of Michele Henriette Stewart nee Bouman and should forthwith pay her an amount of CHF 806,560.00 (eight hundred and six thousand five hundred and sixty Swiss francs) in relation with the liquidation of the matrimonial regime of property rights;

X.-        **orders** that the LPP occupational benefit assets of the parties be divided in equal shares among each party, in accordance with Article 122 of the CC;

XI.-       **refers** the case to the Court of Social Insurance of the Cantonal Court for the purpose of the partition according in the proportion set forth hereinabove:



---

## CERTIFICATE OF ACCURACY

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK )

        Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages.  I am competent to translate from French to English.  I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____
Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

_____
Notary Public

MOHAMMED N. MOJUMDER
Notary Public, State of New York
No. 62-4862605
Qualified in Bronx County
Commission Expires Feb. 26, 2018

Translation from French                                                                                        23

XII.-        **compels** William Pierce III Stewart to pay a monthly maintenance contribution, payable in advance on the 1st day of each month to Michele Stewart nee Bouman, upon entering a final and enforceable decree, in an amount of

- CHF 10,000.00 (ten thousand Swiss francs) until the elder child is no longer dependent;

- CHF 12,000.00 (twelve thousand Swiss francs) as of that date and until the younger child is no longer dependent;

- CHF 15,000.00 (fifteen thousand Swiss francs) as of that date and within the limits of Article 130 of the CC;

XIII.-       **sets** at CHF 4,632.65 (four thousand six hundred and thirty-two Swiss francs and sixty-five cents), including VAT and expenses, the compensation payable to Mrs. Chappaz for the activity carried out from January 10, 2011 to May 7, 2012;

XIV.-        **says** that the compensation set under point XII above shall be borne by the children's parents in the amount of CHF 1,544.20 (one thousand five hundred and forty-four Swiss francs and twenty cents) payable by Michele Stewart nee Bouman and CHF 3,088.45 (three thousand eighty-eight Swiss francs and forty-five cents) payable by William Pierce III Stewart;

XV.-         **releases** Mrs. Laure Chappaz from her assignment as a curator representing the children;

XVI.-        **sets** the judicial costs at CHF 43,656.15 (forty-three thousand six hundred and fifty-six Swiss francs and fifteen cents) for the Petitioner and CHF 53,603.95 (fifty-three thousand six hundred and three Swiss francs and ninety-five cents) for the Defendant;

XVII.-       **says** that William Pierce III Stewart is the immediate debtor of Michele Henriette Stewart nee Bouman in the amount of CHF 401,844.60 (four hundred and one thousand eight hundred and forty-four Swiss francs and sixty cents) representing judicial costs, i.e. CHF 43,656.15 (forty-three thousand six hundred and fifty-six Swiss francs and fifteen cents) as a reimbursement of her judicial costs and CHF 358,188.45 (three hundred and fifty-eight thousand one hundred and eighty-eight Swiss francs and forty-five cents) as a reimbursement of her attorney fees;



**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK  )

Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages.  I am competent to translate from French to English.  I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

Notary Public

MOHAMMED N. MUJUMDER
Notary Public, State of New York
No. 03J49E28C8
Qualified in Bronx County
Commission Expires Feb 20, 2018

Translation from French                                                                                      24

XVIII.-          **dismisses** any further claims.
                 The President                              The court clerk
                 [signature]                                [signature]
                 Philippe Goermer                           Lionel Ducret

On the same day

The foregoing decree is notified by sending copies:
-to the Petitioner, through her counsel;
-to the Defendant, personally;
-to Mrs. Chappaz, the children's curator;
-to the Justice of Peace of the district of Aigle.

Children William and Vanessa being over 16, an excerpt of the grounds and sections of the judgment concerning them shall be notified to them.

As soon as the decree becomes final and enforceable, the file shall be referred to the Court of Social Insurance of the Cantonal Court, which shall rule on the partition amount of the occupational benefit assets.

An **appeal** pursuant to Articles 308 *et seq.* of the CCP may be lodged within **30 days** of notification of this decision by filing with the clerk's office of the Cantonal Court in a motivated brief in writing.

**Motion to set aside** The losing party may request to be judged in his presence by filing a motion to set aside, in two counterparts, with the clerk's office of the District Court for Eastern Vaud, within **twenty days** of this notification and by paying, within the same time limit, an amount of CHF **14,373.50 fourteen thousand three hundred and seventy-three Swiss francs and fifty cents)**



---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF NEW YORK )

Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

[signature]

Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17ᵗʰ day of February, 2015

Notary Public

MICHAEL N. MIJJUNDER
Notary Public, State of New York
No. 01 4952808
Qualified in Bronx County
Commission Expires Feb. 26, 2018

Translation from French                                                                    25

in settlement of the default fees, i.e. in order to reimburse the expenses that the opposing party has accepted to pay in vain as a result of the default.

The first court clerk
[signature]
Geraldine Ruffieux

[L.S.] Certified true copy
The court clerk
[signature]

On November 2, 2012
The above decree is final and
enforceable as of October 1, 2012

The court clerk
[signature] [L.S.]

APOSTILLE
(Convention de la Haye du 5 octobre 1961)

1. Country:     SWITZERLAND
   This public document
2.   was signed by Marika Bovey
3.   acting as a file manager
4.   bears the seal/stamp of the Canton of Vaud - District Court for Eastern Vaud
         Certified
5. in Lausanne          6. On November 9, 2012
7. by the State Chancellery of the Canton of Vaud
8. under no. 14,771
9. Seal/stamp          10. Signature          [L.S.]
                       The State Chancellor
                       By Christophe Chevalley
                       [signature]

Certified true and correct translation
Geneva, July 16, 2013



---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NEW YORK )

        Kannan Vasudevan, being duly sworn, deposes and says:

I am fluent in both the English and French languages. I am competent to translate from French to English. I have reviewed the above translation from a copy of the original document in the French language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

_____
Kannan Vasudevan
Trustforte Language Services

Sworn before me this
17th day of February, 2015

_____
Notary Public

MOHAMMED N. MUJUMDER
Notary Public State of New York
No. 01 4962808
Qualified in Bronx County
Commission Expires Feb. 28, 2018