REPLY TO:
Catherine Pastrikos Kelly, Esq.
Direct Dial: (973) 602-3423
CKelly@Meyner.com

# Meyner and Landis LLP

Attorneys At Law
One Gateway Center
Suite 2500
Newark, New Jersey 07102
www.meyner.com

New York:
100 Park Avenue
16ᵀᴴ Floor
New York, New York 10017

August 16, 2021

**Via ECF**
Hon. Naomi Reice Buchwald
United States Courthouse, Courtroom 21A
500 Pearl St.
New York, New York 10007-1312

> Re:   *Stewart v. Stewart, Case No. 1:19-cv-05960-NRB*

Dear Judge Buchwald:

This firm represents Michele Stewart in the above-referenced matter. We write pursuant to Your Honor's Individual Practices seeking a pre-motion conference to request that the Court permit Defendant to file a motion for contempt against Plaintiff for her repeated flagrant violations of the Court's order during a conference on April 1, 2020 and the Court's Orders, dated September 8, 2020 (Doc 81), September 21, 2020 (Doc 85) and June 25, 2021 (Doc 102), based on her refusal to produce all documents in her possession, custody and control relating to the sale, transfer or gifting of any jewelry at issue in this action.

On April 1, 2020, the Court ordered during a telephonic case management conference that Plaintiff conduct additional searches of documents in her possession, custody and control responsive to Defendant's document requests based on the fact that Plaintiff only produced a limited number of documents and Plaintiff's failure to verify the search terms she used to search for responsive documents.[1] Despite the Court's clear direction, Plaintiff failed to produce any further documents responsive to Defendant's requests. As a result, on September 8, 2020, the Court issued another order directing Plaintiff to run additional searches for documents responsive to Defendant's document requests. (Doc 81.) After Plaintiff continued to obstruct discovery, the Court was forced to again issue an Order, dated September 21, 2020, specifying the precise search terms Plaintiff must use to search for responsive documents and the exact email accounts Plaintiff must search. (Doc 85.)

Thereafter, on or about May 28, 2021, Defendant was made aware that Plaintiff purposefully did not produce documents in her possession, custody and control relating to the sale, transfer or gifting of any jewelry at issue in this litigation. As a result, Defendant requested that the Court allow Defendant to file a motion for contempt against Plaintiff for Plaintiff's blatant violation of the Court's orders. On June 25, 2021, the Court issued an Order stating Plaintiff:

> has failed to make all of the ordered disclosures about 'all jewelry that plaintiff has owned throughout her lifetime.' ECF No. 81 at 3. With some reluctance, the Court gives plaintiff one last chance to make full and accurate disclosures within one week in accordance with the Court's prior orders.

---

1 *See* Transcript, dated April 1, 2020, attached as **Exhibit 1** at 42:9-16.

Doc 102.

In response, Plaintiff produced nine (9) pages of documents relating to her sale of the Harry Winston platinum and diamond 24.79 carat ring (the "**Ring**")—the most expensive piece of jewelry at issue in this litigation.[2] Not surprisingly, however, despite the Court's generous extensions and extremely detailed instructions in multiple orders regarding how Plaintiff must search her documents and what documents Plaintiff must produce, Plaintiff defiantly refuses to produce all documents in her possession, custody and control relating to the sale, transfer or gifting of the jewelry.

For example, on PCT002187, Plaintiff's counsel references that Sotheby's sent him an email on July 7, 2016.[3] Specifically, Plaintiff's counsel states "[t]his letter is in response to your July 7th e-mail request (sic) a letter pertaining to my client's title to the above mentioned jewelry." Plaintiff failed to produce the email, dated July 7, referenced in PCT002187.

Also on PCT002187, Plaintiff's counsel states that he provided Sotheby's "with the bill of sale showing the ring was purchased by Mr. Stewart for Mrs. Stewart". In addition, Plaintiff's counsel states he provided Sotheby's "with copies of all emails from the daughter-in-law suggesting she understood that Barbara had the right to take possession of her jewelry."[4] Plaintiff failed to produce any these communications.

Further, on PCT002187, Plaintiff's counsel advises Sotheby's, "I provided you with a copy of the Referee's Report[.]"[5] Plaintiff failed to provide this communication.

In addition, Plaintiff did not produce the fully executed agreement with Sotheby's because the agreement Plaintiff produced at PLT002192 is not countersigned by Sotheby's.[6]

Plaintiff also failed to produce any documents referencing Sotheby's payment in connection with the sale of the Ring, such as a cancelled check, wire confirmation or confirmatory communications.

Finally, Plaintiff failed to produce any documents relating to the sale, transfer or gifting of any other jewelry at issue in this litigation. For example, Plaintiff produced no documents relating to the sale of the ruby earrings.

Pursuant to the Order, dated June 25, 2021, Plaintiff was required to produce the above information by July 2, 2021, but failed to do so. We sent Plaintiff a deficiency communication on July 23, 2021, but Plaintiff failed to respond.[7] It is beyond time for Plaintiff to begin taking the Court's orders seriously. Plaintiff's repeated defiant refusal to comply has unnecessarily delayed this case and forced Defendant to spend an unreasonable amount of attorney's fees and costs to compel Plaintiff's compliance. Accordingly, Defendant seeks permission to file a motion to hold Plaintiff in contempt for her failure to produce all

---

2 *See* Plaintiff's production documents Bates labeled PCT002187-95, attached as **Exhibit 2**.

3 *Id.* at PCT002187.

4 *Id.*

5 *Id.*

6 *Id.* at PLT002192.

7 *See* Email from Catherine Pastrikos Kelly, Esq. to David Marcus, Esq., dated July 23, 2021, attached as **Exhibit 3**.

documents in her possession, custody and control related to the sale, transfer or gifting of any jewelry in violation of the Court's orders. Alternatively, Defendant seeks permission to file a motion to compel Plaintiff to produce such documents.

Respectfully submitted,
**MEYNER AND LANDIS LLP**

*Catherine Pastrikos Kelly*

Catherine Pastrikos Kelly (CP3300)

cc:       David Marcus, Esq. (*Plaintiff's counsel, via ECF*)

1

K41dstec
                            Teleconference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BARBARA STEWART,

                Plaintiff,                    New York, N.Y.

           v.                                 19 Civ. 5960(NRB)

MICHELE STEWART a/k/a Michele
Bouman-Stewart,

                Defendant.

------------------------------x

                                              April 1, 2020
                                              12:07 p.m.

Before:

                    HON. NAOMI REICE BUCHWALD,

                                              District Judge

                    APPEARANCES (via teleconference)

MARCUS & CINELLI, LLP
     Attorneys for Plaintiff
BY:  DAVID P. MARCUS
     EDWARD P. YANKELUNAS

MEYNER AND LANDIS LLP
     Attorneys for Defendant
BY:  DAVID GRANTZ
     CATHERINE PASTRIKOS KELLY

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

K41dstec
Teleconference

1          MR. MARCUS:  I don't have her entire email collection,

2     but I have hundreds of thousands of pages of documents from

3     prior hearings, what have you, and from Barbara Stewart,

4     because I represented her for ten years.  I personally ran

5     those searches on all -- and we have -- I have tried to

6     accumulate them.  And I don't have their entire database of

7     emails.  I don't know that I am required to do that on her

8     emails.  That's the one thing that I have some -- I had some

9     emails from her.  I had some years ago, I had -- I had copied a

10    number of files from her.  But other than that, I asked her to

11    run it on her -- and I couldn't tell you when that email that

12    she has currently -- it is a Gmail account.  I couldn't tell

13    you when that started, but I asked her to run those -- those

14    other searches independently.  I personally ran the searches

15    from my end on everything that I had on my computer and every

16    document that we have in our files are computerized, and so,

17    you know --

18          THE COURT:  Let me interrupt you.

19          Mr. Marcus, does this mean that there has not been a

20    comprehensive search of the plaintiff's emails and her

21    computer?  Is that what it means?

22          MR. MARCUS:  I wouldn't say that.  I would say there

23    was a comprehensive search for those search terms that I just

24    described -- Topaze with an "e," Topaze without an "e," "EGBF,"

25    "Michele" as in Michele Bouman, "Iglehart," and "jewelry,"

K41dstec
Teleconference

1    those, which I would, I feel, are comprehensive.  I don't know

2    what else there could be that would generate anything relevant

3    to the issues that we're talking about in this case.  Those are

4    the search terms that I thought were -- but they want me to run

5    search terms of "rock" and, I don't know, some other -- "ring,"

6    "rock," "Jeffrey Stewart."  There are a number of names in

7    there of people, some I don't even know who they are.  And I

8    don't know what they would have to do with this.

9            THE COURT:  OK.  If the defendants committed their own

10   client to run the search of terms, then it's certainly

11   acceptable for the plaintiff to let the client run the search

12   terms.  So, why don't we have Mrs. Stewart run some additional

13   search terms.  If you guys can't agree on exactly which ones --

14   which additional terms Ms. Stewart ought to run searches on,

15   you can submit your agreements and disagreements to me and I'll

16   figure it out.  How is that?

17           MS. KELLY:  Sounds good, Judge.  Thank you.

18           MR. GRANTZ:  This is Dave Grantz.

19           It seems that that is the only resolution here,

20   because we don't believe that Ms. Stewart ran searches and we

21   don't believe that she is capable of running the searches.  And

22   we also don't believe that the production, you know, provides

23   the documents that exist, because we know from other

24   documentation that there were text messages and there were

25   emails and there were discussions between Tres and her about

2



**MARCUS & CINELLI LLP**

July 11, 2016

<u>**CONFIDENTIAL**</u>

<u>**VIA E-MAIL ONLY (Elyse.Dreyer@sothebys.com)**</u>

Elyse Dreyer, Esq.
Senior Vice-President
Sotheby's
1334 York Ave.
New York, N.Y. 10021

**Re: Barbara Stewart Diamond Ring**

Dear Ms. Dreyer:

This letter is in response to your July 7th e-mail request a letter pertaining to my client's title to the above mentioned jewelry.

1.      <u>Divorce Proceeding Files</u>:  I can represent that I have reviewed a substantial number of documents from Ms. Stewart's divorce proceeding file, and I am generally familiar with the issues addressed in that proceeding.  I have also reviewed the Appellate Division's decision, portions of the voluminous Special Referee's Report and the Court's confirmation of the majority of that Report.  However, I was not counsel to Barbara on that matter and do not have access to the entire file.

2.      <u>Title to Ring</u>:  I can represent that I am confident that Ms. Stewart has title to the ring at issue.  We provided you with the bill of sale showing the ring was purchased by Mr. Stewart for Mrs. Stewart.  Further, her ex-husband and son testified that the ring was hers. Barbara did make conflicting statements about giving it to her daughter-in-law to hold in trust for her granddaughters, but no such trust documents have ever been offered and neither her daughter in law nor her granddaughters has claimed ownership.  I provided you with copies of e-mails from the daughter in law suggesting she understood that Barbara had the right to take possession of her jewelry.

3.      <u>Letter to Court</u>: I provided you with a copy of the Referee's Report detailing the letter from Barbara's marital counsel notifying the court that Barbara had found the ring. Opposing counsel would have been copied on that letter and also received a copy of the Report.

I trust this responds in full to your inquiry.  Please advise if you require any further information, as my client is anxious to move this forward.  Thank you for your courtesy and consideration.

Very truly yours,

David P. Marcus

DPM:cac

**PLT002188**

# Sotheby's
1334 YORK AVENUE   NEW YORK NY 10021   212 606.7000   WWW.SOTHEBYS.COM

Private Sale Agreement

July 25, 2016

Marcus & Cinelli, LLP, as agent for an undisclosed principal
8416 Main Street
Williamsville, NY 14221-6138

This letter agreement (the "Agreement") confirms the terms under which you grant to Sotheby's, Inc. the exclusive right to offer and sell the property listed on Schedule I hereto (the "Property"). As used herein, "we", "us", "our" and "Sotheby's" mean Sotheby's, Inc. and any affiliated company offering Property for sale under this Agreement, and "you" and "your" mean Marcus & Cinelli, LLP, as agent for an undisclosed principal.

1.      You hereby grant to us the exclusive right to offer the Property for sale for a period of thirty (30) days from the date you sign this Agreement. The purchase price (the "Purchase Price") for the Property shall be an amount which will result in a payment to you of not less than $2,375,000 (the "Net Price"). You have agreed to accept the Purchase Price and the Net Price. You also agree that, in connection with the sale of the Property, we will have absolute discretion as to (a) consulting any expert either before or after the sale and (b) researching the provenance of the Property either before or after the sale. This Agreement is conditional upon the satisfactory physical inspection of the Property by Sotheby's in its sole discretion (the "Physical Inspection") at our New York premises. Accordingly, you and Sotheby's agree that all of our respective obligations under this Agreement to offer the Property for sale in a private sale will be null and void if the Physical Inspection is not satisfied.

2.      You agree that we may retain solely for our account as our commission any amount of the Purchase Price in excess of the Net Price, provided that our commission shall not exceed 20% of the Purchase Price.

You agree to bear the cost of packing and shipping the Property to our premises. We agree to bear the cost of bearing liability for any loss or damage to the Property as provided in paragraph 4 hereof.

We agree to mail to you or wire transfer to you pursuant to your signed instructions, within five (5) business days after our receipt of good funds, the Purchase Price after deducting our commission, any reimbursable expenses to be paid by you, and any other amount you owe us or any of our affiliated entities, whether arising out of the sale of the Property or otherwise. In the event the purchaser fails to pay any portion of the Purchase Price, you agree that we have no obligation to enforce payment by the purchaser. In the event the Property remains unsold at the expiration of the period of our exclusive right to offer the Property for sale as set forth in paragraph 1 above, we will return the Property to you at our expense.

3.      You represent and warrant to us and the purchaser that: you are a limited liability partnership duly organized, validly existing and in good standing in the jurisdictions where such qualification is required and have full power and authority to execute, deliver and perform your obligations under this Agreement; you are the sole and absolute owner of the Property, provided that, to the extent you are acting as an agent for someone who is not signing this Agreement, you instead represent and warrant that your principal is the sole and absolute owner of the Property, and

PLT002189

# Sotheby's

your principal has expressly authorized you to engage additional agents/brokers such as Sotheby's to act on its behalf in selling the Property, and all commissions payable to you and any other agents engaged in the sale of the Property have been authorized by your principal; you have the right to consign the Property for sale; this Agreement has been duly authorized, executed and delivered by you and constitutes your legally binding obligation; the Property is now, and through and including its sale will be kept, free of all liens, claims and encumbrances of others including, but not limited to, claims of governments or governmental agencies; good title to and right to possession of the Property will pass to the purchaser free of all liens, claims and encumbrances; you have provided us with all information you have concerning the provenance, condition and restoration of the Property; you have no reason to believe that the Property is not authentic or is counterfeit; if the Property has been imported into the United States, the Property has been lawfully imported into the United States and has been lawfully and permanently exported as required by the laws of any country (including any laws or regulations applicable in the European Union) in which it was located; required declarations upon the export and import of the Property have been properly made and any duties and taxes on the export and import of the Property have been paid; you have paid or will pay any and all taxes and/or duties that may be due on the net sale proceeds of the Property and you have notified us in writing of any and all taxes and/or duties that are payable by us on your behalf in any country other than the United States.

You agree to indemnify and hold us and the purchaser harmless from and against any and all claims, actions, damages, losses, liabilities, and expenses (including reasonable attorneys' fees and expenses) relating to the breach or alleged breach of any of your agreements, representations or warranties in this Agreement.

Your representations, warranties and indemnity will survive completion of the transactions contemplated by this Agreement.

4.      We agree to bear liability for any loss or damage to the Property from the time we receive the Property and while the Property is in our custody and control. The maximum amount of our liability to you resulting from loss or damage to the Property shall not exceed the Net Price (the "Value of the Property"). We will pay you the Value of the Property or the Depreciation Amount (as defined below), as the case may be, in the event of loss or damage as set forth below. In the event of a total loss (Property which has been lost, or Property which has been damaged and has depreciated in value, in our opinion, by 50% or more), we will pay you the Value of the Property for such Property and simultaneously with such payment, all title and interest to the Property shall pass to us. In the event of a partial loss (Property which has been partially damaged or lost and has depreciated in value, in our opinion, by less than 50%), we will pay you the amount of depreciation, as determined by us in our discretion (the "Depreciation Amount"), and such Property will be offered for sale or, at your request, returned to you. We will not be responsible for Property that is not within our custody and control or liable for damage to frames or glass covering prints, paintings or other works, for damage occurring in the course of any process undertaken by independent contractors employed with your consent (including restoration, framing or cleaning), or for damage caused by changes in humidity or temperature, inherent conditions or defects, normal wear and tear, war, acts of terrorism, nuclear fission or radioactive contamination, or chemical, bio-chemical or electromagnetic weapons. We maintain insurance for loss or damage to all property that is under our custody and control. In the event of any loss of or damage to the Property as described in this paragraph 4, you agree that your sole remedy against us will be the payment of the Value of the Property or the Depreciation Amount (the

2

PLT002190

# Sotheby's

"Payment"), as the case may be, and upon receipt of the Payment by you, you irrevocably release and discharge Sotheby's, on your own behalf and on behalf of any insurer you may have, from all liability for loss or damage to the Property resulting from any cause whatsoever, including but not limited to the negligence of Sotheby's and its agents and independent contractors.

5. You and we agree that the Property will be offered for sale "AS IS" and neither you nor we shall make any representations or warranties with respect to merchantability, fitness for a particular purpose, the physical condition, size, quality, rarity, importance, provenance, restoration, exhibitions, literature or historical relevance of the Property and no statement anywhere, whether oral or written, shall be deemed such a representation or warranty.

Notwithstanding the foregoing, we and you will guarantee to the purchaser that the authorship, period, culture or origin of the Property is as set out in the bold or capitalized type heading in the description on Schedule I for a period of four (4) years from the date the Property is sold. This guarantee is not assignable and is only applicable to the original purchaser and not to any subsequent owner or owners who acquire an interest in the Property. In the event we determine that the Property is not as stated above, you authorize us for such four (4) year period to rescind the sale and return the Purchase Price (including commission) for such item to the purchaser. In such event, we will credit the purchaser with the Purchase Price, you will return to us any sale proceeds for such Property previously paid by us to you or to a third party as directed by you, and you will reimburse us for expenses incurred in connection with the rescinded sale, including the reasonable attorney's fees we incur in collecting from you any amounts due herein, and pay us any other amounts you owe us or any of our affiliated entities. Upon such reimbursement and payment by you and the return of the Property to us from the purchaser, we will return the Property to you at our expense, except in the event of an adverse claim of title, in which case we will retain the Property until such claim has been resolved.

6. You hereby acknowledge that you are aware of the relative advantages of consigning property for sale by public auction and via private sale, and having taken those considerations into account, wish to sell the Property via private sale with Sotheby's as your exclusive sales agent pursuant to the terms of this Agreement. In addition, Sotheby's reserves the right to remunerate any employee of the organization out of the commission it earns on this transaction.

7. This Agreement is an important legal document. You acknowledge that you have had the opportunity to consult an attorney before signing this Agreement and have signed this Agreement after having the opportunity to consult with an attorney of your own choosing. Notwithstanding any references to any transactions or arrangements in this Agreement, or any contemporaneous written, oral or implied understandings of the parties relating to the subject matter of this Agreement, Sotheby's has not provided legal or tax advice or tax planning to you or for your benefit in connection with the transactions contemplated by this Agreement, and no one at Sotheby's has acted as your attorney or tax advisor. You have carefully read this Agreement in its entirety, understand all of its terms, and knowingly and voluntarily agree to all of the terms and conditions contained herein.

8. **This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of law rules and principles. In the event of a dispute hereunder, you agree to submit to the exclusive**

3

PLT002191

# Sotheby's

jurisdiction of the state courts of and the federal courts sitting in the State and County of New York. This Agreement shall be binding upon you and your heirs, executors, beneficiaries, successors and assigns. Neither you nor we may assign this Agreement without the prior written consent of the other party hereto, except that we may assign this Agreement to any of our related or affiliated entities without your prior consent. Neither you nor we may amend, supplement or waive any provision of this Agreement other than by means of a writing signed by each of the parties hereto. Neither party shall be liable to the other for any special, consequential, incidental or punitive damages. This Agreement, including the Schedules hereto, constitutes the entire agreement between the parties with respect to the transactions contemplated hereby and supersedes all prior agreements or understandings, written or oral, with respect to the subject matter of this Agreement. You agree that you will not disclose the terms of this Agreement to any third party without our prior written consent, except to attorneys and accountants on a need-to-know basis, or as a result of valid legal process compelling the disclosure, provided you first give us prompt written notice of such service of process and allow us, if we deem it appropriate, to obtain a protective order. You agree to furnish us, upon our request, with any additional information required to comply with applicable law. Any notices given hereunder to you or us shall be in writing to the respective addresses indicated on the first page of this Agreement (or to such other address as you or we may notify the other in writing) and shall be deemed to have been given five (5) calendar days after mailing to such address or one (1) business day after delivery by hand or telecopier. You agree to provide us, upon our request, verification of identity in an appropriate form. In the event we receive a subpoena from you or a third party relating to the Property or the Agreement, you shall pay us the costs we incur, including reasonable attorney's fees, in responding to the subpoena. Any paragraph headings contained in this Agreement are for convenience of reference only and shall not affect in any way the meaning or interpretation of this Agreement. This Agreement may be executed in counterparts, each of which will be deemed an original and all of which together constitute one and the same instrument. Signatures sent by facsimile transmission and scanned executed agreements in PDF format sent by email transmission are each valid and binding and will be deemed an original. If you are acting as an agent for someone who is not signing this Agreement, you and your principal jointly and severally assume your obligations and liabilities hereunder to the same extent as if you were acting as principal.

If the above accurately sets forth our understanding, please so indicate by signing below.

Very truly yours,
SOTHEBY'S, INC.

By: _____

ACCEPTED AND AGREED:

MARCUS & CINELLI, LLP, as agent for an undisclosed principal

By: _David P. Ce____, as partner   Date: 7-27-16
Name: DAVID P. MARCUS
Title: PARTNER

G:\SPECIAL\WINWORD\Transactional\PSA\SELL\2016\Marcus & Cinelli, LLP, as agent for an undisclosed principal.doc

4

PLT002192

# Sotheby's

### SCHEDULE I

| DESCRIPTION | NET PRICE |
|---|---|
| PLATINUM AND DIAMOND RING, HARRY WINSTON<br>24.79 carats, accompanied by GIA certificate | $2,375,000 |

5

PLT002193

# Sotheby's

1334 York Avenue
New York NY 10021
+1 212 606 7000
www.sothebys.com

Marcus & Cinelli, LLP
Mr David P Marcus
5416 Main Street
WILLIAMSVILLE NY 14221-5362
USA

| | |
|---|---|
| Account number | 51435045 |
| Statement number | 92589442 |
| Date & tax point | 28 July 2016 |
| Sale currency | USD |

## Private Sale statement

**Item 95DWS - Platinum and Diamond Ring**

| | |
|---|---|
| Sale price | $2,375,000.00- |
| **Net amount for this lot** | **$2,375,000.00-** |
| **Total due to you** | **$2,375,000.00-** |

- Your Net Sale Proceeds: $2,375,000.00

- Payment will be made after the sale if buyer funds are received or the property is released.

- Payment will be made according to the terms agreed.

  In the event payment date falls on a weekend or bank holiday, payment will be made on the following business day without interest on the extra day.

- Please note that this statement does not reflect any outstanding purchases, loans or advances.

**For assistance, please contact**
**Claire Zogas**
**Post Sale Manager**
**T** +1 212 606 7444
**F** +1 212 606 7355
**E** uspostsaleservices@sothebys.com

**PLT002194**

# Sotheby's

1334 York Avenue
New York NY 10021
+1 212 606 7000
www.sothebys.com

Marcus & Cinelli, LLP
Mr David P Marcus
5416 Main Street
WILLIAMSVILLE NY  14221-5362
USA

| | |
|---|---|
| Account number | 51435045 |
| Date | 28 July 2016 |

## The status of your property
Private Sale

---

Thank you for giving us the opportunity to sell your property. We are pleased to inform you that the sale has been completed. Enclosed are the details.

- **Private Sale statement**

  This shows the results of the sale and details your proceeds after deductions for any charges or expenses. Please note that your proceeds will be paid in accordance with our agreement. In the event the payment date falls on a Saturday, Sunday or bank holiday, payment will be due on the following business day without interest on the extra day.

 **Register on Sothebys.com today**

Activate your online account to view invoices, statements, manage bids, bid online and check payment statuses.

To activate your account, email enquiries@sothebys.com.

For assistance, please contact
**Claire Zogas**
**Post Sale Manager**
**T** +1 212 606 7444
**F** +1 212 606 7355
**E** uspostsaleservices@sothebys.com

**PLT002195**

3

| | |
|---|---|
| **From:** | Catherine P. Kelly |
| **To:** | David Marcus; Edward P. Yankelunas (eyankelunas@hoganwillig.com) |
| **Cc:** | David B. Grantz; Javier M. Lopez |
| **Subject:** | Stewart v. Stewart |
| **Date:** | Friday, July 23, 2021 3:48:40 PM |

David,

We reviewed the documents Plaintiff produced in response to the Court's Order, dated June 25, 2021 (the "Order"), requiring Plaintiff to produce all documents relating to the sale, transfer or gifting of jewelry within one week of the Order. Based on Plaintiff's production, it is clear that Plaintiff failed to produce all documents in her custody, possession and control pursuant to this Order.

For example, on PCT002187, you reference that Sotheby's sent you an email on July 7, 2016, but you failed to produce this document.

Also on PCT002187, you state that you provided Sotheby's "with copies of all emails from the daughter-in-law suggesting she understood that Barbara had the right to take possession of her jewelry."

Further, on PCT002187, you advise Sotheby's, "I provided you with a copy of the Referee's Report[.]"

In addition, you have not produced the fully executed agreement with Sotheby's because the agreement you produced is not countersigned by Sotheby's.

You have also failed to produce any documents referencing Sotheby's payment in connection with the sale of the Harry Winston platinum and diamond 24.79 carat ring (the "Ring"), such as a cancelled check, wire confirmation or confirmatory communications.

Please produce all of the above documents and any other documents Plaintiff is withholding relating to the sale of the Ring immediately.

Finally, the Order required Plaintiff to produce all documents relating to the sale, transfer or gifting of any jewelry. For example, Plaintiff has produced no documents relating to the sale of the ruby earrings. Therefore, please immediately produce any other documents relating to the sale, transfer or gifting of any jewelry in Plaintiff's possession, custody and control.

Plaintiff was required to produce the above information by July 2, 2021 but failed to do so. It is beyond time for Plaintiff to begin taking the Court's Orders regarding discovery seriously. Therefore, to the extent Plaintiff does not produce all information required by the Order by July 27, 2021, we will be seeking appropriate relief with the Court.

Thanks,
Catherine

CATHERINE PASTRIKOS KELLY, ESQ. | PARTNER | MEYNER AND LANDIS LLP | ONE GATEWAY CENTER, SUITE 2500 | NEWARK, NEW JERSEY 07102
DIRECT 973.602.3423 | FAX 973.624.0356 | BIO | WEBSITE



This message contains privileged and confidential attorney work product that is intended only for the use of the addressee. Reproduction or dissemination of this message by anyone other than the addressee is strictly prohibited. If you believe you have received this communication in error, please notify the sender immediately by telephone (973.602.3423) or e-mail and delete all copies of this message and any attachments. The dissemination of this email in no way creates any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the law firm of Meyner and Landis LLP, its employees, agents, or any other person.